## William E. Hatterman v. Tonnes M. Thompson, for Use, etc.

| 83 | 217 |
|----|-----|
| 94 | ³598 |

| 83 | 217 |
|-----|-----|
| 107 | ¹305 |

1.  WAIVER—*Of Defects in Taking an Appeal by Certiorari.*—Taking an appeal from a justice by certiorari is provided for by statute, and where the appellee, instead of moving to quash, waits until the cause is reached for trial and then asks and obtains a continuance, he waives all irregularities in the method of taking the appeal.

2.  INSTRUCTIONS—*Must be Based upon the Evidence.*—An instruction which tells a jury that they may allow interest for unreasonable and vexatious delay after a certain date, where there is no evidence upon which to base it, is erroneous.

3.  INTEREST—*What is Not an Unreasonable and Vexatious Delay of Payment.*—To appear and defend a suit is a right which can not be construed into unreasonable and vexatious delay of payment without impairing the right itself.

Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding.   Heard in this court at the October term, 1898.   Reversed and remanded.   Opinion filed June 12, 1899.

Statement of the Case.—The appellee, Thompson, confessed a judgment for $143.79 in favor of the Chicago Sash & Door Co., before a justice of the peace, December 11, 1895, on which immediate execution was issued and returned *nulla bona.* On the same day a garnishment suit was brought, in the name of Thompson for the use of the judgment creditor, against appellant, and a final judgment was rendered against him December 24, 1895, from which he appealed by certiorari to the Circuit Court, January 18, 1896.

May 26, 1898, the appearance of appellee was entered, and he thereafter, on June 23, 1898, when the case was called for trial and before the jury was impaneled, made a motion to quash the writ of certiorari, which was overruled. It also appears that about a week prior to the making of the motion to quash, the case was reached for trial, when the plaintiff (appellee here) moved to continue the cause, to which motion appellant's counsel agreed, and pursuant to such agreement the case was set down for hearing on June 23, 1898. It appears from the evidence that Thompson bought of appellant lots 8 and 9, described below, October 14, 1894, agree ng to pay for each lot $300, and appellant agreed to loan him $1,200 to build a house on each lot, $600 for each house. They made the following agreement in writing, which is signed by appellant alone, viz.:

"Chicago, October 20, 1894.

Agreement made between Tonnes M. Thompson and William E. Hatterman. Whereas, said Tonnes M. Thompson has purchased from William E. Hatterman lots 8 and 9, block 4, in Hatterman's Irving Park Boulevard Subdivision, for the sum of $300 each, and gave William E. Hatterman a note secured by trust deed on each lot for $900 each. First, the said William E. Hatterman agrees to pay to the said Thompson the sum of $600 for each house, which amount the said Thompson is to use in erecting a frame cottage on each lot to be not less than 20x40 feet.

William E. Hatterman."

There is no evidence in the record as to any other or further specifications as to the character of the house to be built. Thompson and his wife also, as part of the trans-

action, made and delivered to appellant their trust deed, dated October 14, 1894, by which they conveyed to appellant said lot 8, to secure their note of even date, made by them, payable to their own order and by them indorsed, for the sum of $900, due five years after date, bearing interest at seven per cent per annum, payable semi-annually, and ten interest notes, each for $31.50, made by Thompson alone, payable to his order and by him indorsed, becoming due every six months after the date of the principal note, and bearing interest at seven per cent per annum after maturity. This trust deed provides that in default of payment of the interest or any part thereof when due, the whole of the principal sum and interest should thereupon, at the option of the legal holder thereof, become immediately due and payable.

There is no controversy relating to lot 9. Thompson testified that he built a frame cottage on lot 8, twenty feet, six inches, by forty-one feet, six inches, and that he did the last work on it six months before this suit was begun, and that a man named Murson lived in it about four months; also that the house " was all completed and painted once;" also that he did work on it about a year afterward.

As to whether the house was completed or not, there was a conflict in the evidence.

The witness Smith, for appellant, testified in substance that the house required for completion four cellar sash windows, three stops necessary under sill and one under chimney; that it only had one coat of paint, and that the iron railing wasn't upon the front stoop, all of which would cost $93.10, and also that the painting was the substance of what he had mentioned. He was corroborated by another witness, Sampson.

Appellant's attorney testified that appellant sent him the notes above mentioned December 1, 1895, and directed him " to foreclose on whole amount due on these notes; that he had declared the whole sum due." Thompson also testified that on December 3, 1895, appellant gave him the following statement, on which he said no money had been paid, viz.:

"CHICAGO, Dec. 3, 1895.

Mr. T. M. Thompson,
    In account with Wm. E. Hatterman,
      Real estate, loans, renting and insurance,
        768 Milwaukee avenue.

|  |  |  |  |
|---|---|---|---|
|  | Loan | | $900 00 |
|  | Lots 8-4 | $300 00 | |
| 1894 | Recording T. D | 1 20 | |
| Nov. 17. | Paid lumber | 306 28 | |
| Dec. 17. | " N. D. Messenger & Co | 2 87 | |
| Jan. 12. | " insurance (3 houses) | 45 00 | |
| March 3. | " plasterer (book) | 50 00 | |
| April 5. | " " " | 50 00 | |

    Balance on hand ...................... $755 35

    On completion of house ............. $144 65

There is still unpaid the bills for hardware and millwork amounting to about $175. Thompson must bring in the difference first and finish the house, then these bills will be paid."

Appellant's counsel, on cross-examination of Thompson, sought by different questions propounded to show by him what he had done on the house after this statement was given him, and also that on a former trial of a similar suit he had stated that he would complete this building, to all of which objection was made and sustained by the court.

Among the instructions to the jury, the following for plaintiff were given, viz.:

" 1.   If you find from the evidence in this case that T. M. Thompson had, prior to December 15, 1895, given to W. E. Hatterman his note for the sum of $900, secured by a trust deed on certain real estate, and that on said date there was in the hands of said Hatterman more than the sum of $143.79, due to said Thompson, then you will find the issues for the plaintiff."

" 2.   If you find from the evidence in this case that some time prior to December 15, 1895, T. M. Thompson, the plaintiff, had given to W. E. Hatterman his note for the sum of $900 secured by a trust deed on certain real estate, and that on that date said Hatterman was indebted to said Thompson in an amount exceeding the sum of $143.79, and that there has been an unreasonable and vexatious delay in

the payment of the same, then you will find the issues for the plaintiff and assess the plaintiff's damages at the sum of original judgment in favor of the Chicago Sash & Door Company v. T. M. Thompson, with interest on the same from December 15, 1895, to this date."

A verdict for the plaintiff was rendered for $174.31, on which the court gave judgment, from which this appeal is taken.

Hervey H. Anderson, attorney for appellant.

Fred H. Atwood and Frank B. Pease, attorneys for appellee.

Mr. Presiding Justice Windes, after making the foregoing statement, delivered the opinion of the court.

Appellee has assigned a cross-error to the effect that it was error to overrule the motion to quash the writ of certiorari.

Appellant claims that the court erred in excluding evidence, in giving plaintiff's instructions, and that the verdict is against the weight of the evidence.

By entering his appearance and asking a continuance, appellee waived his right to have the writ of certiorari quashed. This mode of taking an appeal is provided by statute. The Circuit Court had, by law, jurisdiction of the subject-matter, and the entry of appellee's appearance gave it jurisdiction of his person, after which he should, at the earliest moment, have made his motion to quash. Instead of doing that, he waited until the cause was reached for trial, when he asked a continuance for one week, which was granted him, and the case set down for hearing. By this action he waived all irregularity in the method of appeal. The motion to quash goes to the jurisdiction of the court to entertain the appeal. Pearce v. Swan, 1 Scam. 266–9; Easton v. Altum, Id. 250; Mitchell v. Jacobs, 17 Ill. 235–7; Roberts v. Thompson, 28 Ill. 79; Roberts v. Formhalls, 46 Ill. 66.

In view of the fact that there were no specifications or contract as to the character of cottage to be built by

Thompson, except that it was to be a frame cottage, to be not less than twenty by forty feet, we are not prepared to hold it was reversible error for the court to sustain the objections to the questions on cross-examination, by which appellant's counsel, it seems, expected to elicit a statement by Thompson as to what he had done on the house after December 3, 1895, and also what the witness had stated on the trial of a similar suit he would complete the building.

The witness had stated previously that he had done work on the building about one year after December 3, 1895, but no offer was made by counsel to show the nature of the work which Thompson had done, and for all we are able to tell, from the record, it may have been work which was in no way necessary to the completion of the house. Unless we could see that the evidence was material, it was not error to exclude it. Berkowsky v. Cahill, 72 Ill. App. 101, and cases cited; Nonotuck Silk Co. v. Levy, 75 Id. 5–9.

The question as to what the witness testified to in a similar suit, being evidently for purposes of impeachment, contains no specification of time or place, and the objection thereto was therefore properly sustained.

We are of opinion that appellant's criticisms of the plaintiff's first instruction are not sound. It leaves the jury to determine from the evidence what was due from appellant to Thompson, and does not exclude from the jury any defense of appellant.

The second instruction of plaintiff was erroneous in that it tells the jury they may allow interest for unreasonable and vexatious delay after December 15, 1895. There is no evidence on which to base this part of the instruction.

This suit was begun December 11, 1895. No claim is made that there was delay of payment prior to the commencement of suit; the defense to it seems to have been made in good faith, and we know of no decision of the courts holding that a delay caused by a defense made in good faith is unreasonable or vexatious. They seem to be to the contrary. Sammis v. Clark, 13 Ill. 544; Aldrich v. Dunham, 16 Ill. 404; Franklin County v. Layman, 145 Ill. 145–50; Devine v. Edwards, 101 Ill. 132–48.

Hatterman v. Thompson.

In the Aldrich case, *supra*, the court say: " To appear
and defend a suit is a right which can not be construed into
unreasonable and vexatious delay of payment without
impairing the right itself." For this reason, under the evi-
dence in this case, the allowance of interest was not a
question for the jury, and it should not have been submitted
to them.

Appellant contends that the $900 note and one interest
note of $31.50 were due to appellant on December 1, 1895,
the one by being declared due in default of payment of
interest when due, and the other by its terms, and therefore
that the verdict should have been for appellant.

As to the $900 note, it appears that on December 3, 1895,
appellant made a statement of the amount due from him,
$144.65, which he gave to Thompson, in which he said
nothing of a counter-claim against Thompson, and the jury
were justified from this evidence in finding that the $900
note was not claimed to be due, and moreover the evidence
fails to show for what reason appellant declared this note
due. Also, it was the joint note of Thompson and his wife.
The note of $31.50, which was overdue, was a proper claim
of set-off against Thompson, and should have been allowed
as a set-off in favor of appellant by the jury. There could
be no greater recovery in this case against appellant than
there could have been, had the suit been by Thompson
alone. That the garnishing creditor can have no greater
rights against the defendant than the nominal plaintiff
could have, is the established law.

As to whether the house was completed when the judg-
ment was confessed, there was a conflict in the evidence,
and we can not say, especially as there were no specifica-
tions as to the character and manner of its completion, that
the jury were not justified in finding that it was then com-
plete. They might have found that a painting of the house
two coats, or painting it at all, as well as the other matters
testified to by appellant's witnesses, were not necessary to
a completion.

If the appellee shall, within ten days from the filing of

this opinion, remit the sum of $30.52, apparently allowed for interest, and the further sum of $37.40, being the amount due on the interest note due October 15, 1895, and interest to the date of the verdict, the judgment will be affirmed for the balance, $106.39; otherwise the cause will be reversed and remanded.

The appellee will pay all costs in this court. Reversed and remanded.