# Edward Reeb, Appellee, v. M. A. Bronson, Appellant.

## Gen. No. 5,935.

1. PRINCIPAL AND AGENT, § 167*—*when agent personally liable to third person for goods purchased.* Where a sale of goods is made to one who is known to be an agent for a principal, and for whom vendor supposes such agent is acting, but such agent has no authority to act and does not act for such principal in making the purchase, he is personally liable.

2. TRIAL, § 155*—*when province of jury to weigh conflicting evidence.* The determination of disputed questions of fact properly comes within the province of the jury.

3. EVIDENCE, § 475*—*what constitutes preponderance.* In an action to recover for goods sold and delivered, where defendant denied that a sale was made as alleged, evidence *held* fairly to preponderate in plaintiff's favor, plaintiff being sufficiently corroborated by other witnesses and by the circumstances of the case.

4. ASSUMPSIT, ACTION OF, § 89*—*when necessary to show delivery of goods sold.* In an action for goods sold and delivered where recovery is based on the common counts, the evidence must show a delivery of the goods alleged to have been sold.

5. ASSUMPSIT, ACTION OF, § 89*—*when evidence sufficient to show delivery of goods.* In an action to recover for goods sold and deliv-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ered where plaintiff declares on the common counts, a delivery of the goods alleged to have been sold is shown where it appears that plaintiff hired a drayman to haul the goods to and to load them in a freight car procured by defendant for the transportation of the goods, and where defendant paid the charges of such drayman for such hauling and loading.

6. SALES, § 126*—*what constitutes delivery of goods.* A vendee of goods is placed in actual possession of such goods so as to constitute a delivery where it appears that such goods are placed in the direct control of such vendee.

7. PRINCIPAL AND AGENT, § 183*—*when purchaser of goods ratifies act of seller in employing drayman.* A vendee of goods by paying the charges of a drayman employed by vendor, who hauls and loads such goods into a car engaged by defendant for the transportation of such goods thereby ratifies the act of vendor in employing such drayman to haul and load such goods.

8. SALES, § 126*—*what constitutes delivery of goods.* Actual delivery consists in giving to the buyer, or his servants, or accredited agent, the real possession of the goods sold.

9. SALES, § 126*—*when evidence sufficient to establish delivery of goods.* In an action to recover for goods sold and delivered, evidence *held* sufficient to establish the fact of a delivery to the vendee of the goods sold.

10. PRINCIPAL AND AGENT, § 249*—*when instruction as to personal liability of agent making sale without authority correct.* In an action to recover for goods sold and delivered where defendant was local manager for a brewing company, and where the goods alleged to have been sold consisted of the stock of a saloon, an instruction as to the personal liability of defendant as agent for selling goods without authority, approved.

11. PRINCIPAL AND AGENT, § 169*—*when agent personally liable to third person on contract.* If a person undertakes to contract for an individual or corporation and contracts in a manner not legally binding on his principal, the person so undertaking to contract is personally liable on such contract.

12. PRINCIPAL AND AGENT, § 225*—*when burden on agent to show authority to bind principal.* An agent who makes a contract on behalf of a principal can exonerate himself from personal liability on such contract only by showing affirmatively that he has authority to bid such principal by the contract made, and it is not incumbent on the person with whom the contract is made to show that such agent had not such authority.

13. PRINCIPAL AND AGENT, § 249*—*when instruction as to authority of agent properly modified.* In an action to recover for goods

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

sold and delivered where defendant was local manager of a brewing association, where it was undisputed that defendant had no authority to purchase the goods for his principal, an instruction in reference to such authority *held* properly modified.

14. INSTRUCTIONS, § 120*—*when instruction not based on issue or evidence properly refused.* In an action to recover for goods sold and delivered, where a count presenting the issue as to whether or not plaintiff contracted with defendant as agent for a brewing association, under representation of defendant that he had authority to so contract, had been stricken from the files at the close of plaintiff's evidence, and where there was no evidence on such issue, an instruction on such issue *held* properly refused.

15. APPEAL AND ERROR, § 1514*—*when improper remarks of counsel harmless error.* In an action to recover for goods sold and delivered, remarks of counsel in final argument, an objection to which was sustained by the trial court, *held* improper but not of such a prejudicial character as to have influenced the jury in deciding the merits of the case.

16. INTEREST, § 23*—*when interest not allowed on ground of unreasonable and vexatious delay in payment.* Where the right to recover is disputed both on the facts and on the law, the case is not a proper one for the allowance of interest on the ground of an unreasonable and vexatious delay in payment, if it is clear that the delay was due to the defense made to the action.

17. INTEREST, § 24*—*what does not constitute unreasonable and vexatious delay.* The right to appear and defend a suit is one which cannot be construed into an unreasonable and vexatious delay without impairing the right.

18. INTEREST, § 24*—*what does not constitute unreasonable or vexatious delay in payment.* Mere failure to pay a demand will not necessarily constitute the delay in payment unreasonable or vexatious.

19. INTEREST, § 25*—*when question of what constitutes unreasonable or vexatious delay in payment not for jury.* Where the only delay in payment of a demand is that occasioned by defending the action, the question of the allowance of interest for an unreasonable and vexatious delay in payment is not a question for the jury and should not be submitted to them.

20. APPEAL AND ERROR, § 1659*—*when remittitur cures error in judgment.* Where a judgment is erroneous in that it includes interest which plaintiff is not entitled to recover, the entry of a remittitur for the amount of such interest cures the error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed December 27, 1915.

BOYS, OSBORN & GRIGGS, for appellant.

NORTON & ORTMAN and C. H. THOMPSON, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

In this case an appeal was taken by the appellant, M. A. Bronson, from a judgment for $341.23, rendered against him in assumpsit, in favor of the appellee, Edward Reeb, in the Circuit Court of Livingston county. The suit was commenced by appellee to recover for the remnants of a stock of liquors and cigars which the appellee had carried in the saloon business conducted by him in the Village of Dwight. The saloon fixtures which the appellee had used in the business were owned by the Anheuser-Busch Brewing Association, and the appellant was the agent of this association, with headquarters at Streator, Illinois.

The appellant came to Dwight, with a man by the name of Shanley, on April 18, 1907, two days after the village election which had resulted in making Dwight dry territory, and had limited the time in which appellee could operate his saloon to May 10th, the date of the expiration of his dramshop license. Appellant, as agent of the Anheuser-Busch Brewing Association, had been trying to assist Shanley to get started in the saloon business at Ottawa, Illinois, within the territory controlled by his agency; and he wanted to get, for Shanley, a set of saloon fixtures. Having failed to get a new set of fixtures for Shanley from the Anheuser-Busch Brewing Association, he had come to Dwight, on the day in question, to see about procuring the fixtures which had been in use by appellee.

Appellee asserts, in his testimony, that appellant and Shanley were desirous of getting the fixtures by May 1st, that is to say, ten days prior to the time limit of his license and business, and that he told appellant, who was acting in this matter as agent of the brewing association, that he would not be willing to let him take the fixtures before the 10th of May, unless appellant would also take the remnants of his stock of goods on hand, which he was willing to sell at the cost price; that appellant, upon being informed by appellee's bartender that these remnants of his stock would not exceed in cost the sum of $300 or $400, agreed to take them at the invoice prices; that appellee inferred, from the fact that appellant was representing the Anheuser-Busch Brewing Association as agent in the procuring of the fixtures, he was also acting for the association in the purchasing of the liquor and cigars, and was purchasing them for the brewing association, but that appellant did not make any representation to him to the effect that he had authority from the brewing association to purchase the goods.

Appellant denies that the transaction concerning the alleged sale to him occurred, and there is a conflict of evidence on this question in the case. If the sale was made to appellant, as testified to by appellee, then it was a sale to the appellant, for which he was personally liable. It is not contended in this case, by appellant, that he purchased these liquors for the Anheuser-Busch Brewing Association, nor, that he was acting under any authority from the association, for that purpose, or that as agent generally, he had any authority to purchase these goods, and he testified expressly, that as agent he had no authority to make a purchase of this character. His defense was, that there was no sale made to him at all, which leaves the question as to whether or not there was such a sale made the only real issue in the case. The disputed question is one of fact, and properly comes within the province of the

jury for determination; and the jury did determine it, by their verdict. It may be further said, that while the appellant denies that he had the conversation with appellee, which appellee claimed resulted in a sale, yet the appellee is sufficiently corroborated by other witnesses, and the circumstances surrounding the transaction, as to make the whole evidence concerning the matter fairly preponderate in appellee's favor.

It is true, as a legal requirement, that inasmuch as the recovery in this case is based on the common counts, it is necessary that the evidence should show a delivery of the goods alleged to have been sold to appellant; and we think the evidence does show such delivery. It appears from the evidence that the fixtures, as well as the goods in controversy, had been hauled and placed by a drayman whom appellee had hired for that purpose, in a C. & A. freight car which had been engaged by appellant from the railroad company, and which had been provided for him by the railroad company, to carry freight to Ottawa, Illinois; and it also appeared from the testimony of the drayman that while the appellee hired him, the appellant paid him, not only for hauling the fixtures, but also for hauling the goods, and paid the drayman after he had been informed by him that the goods had been hauled, and put into the car, as well as the fixtures. The goods and the fixtures, therefore, were placed directly within the control, and thereby into the actual possession of the appellant, by the appellee, and appellant by paying the charges for this service, ratified the act of the appellee in employing the drayman to haul these goods, and to place them into the car.

"Actual delivery consists in giving to the buyer, or his servants, or accredited agent, the real possession of the goods sold." (35 Cyc. 189.) Furthermore, after the goods in question came into appellant's possession and control, as stated, he made a disposition of them at Ottawa, by directing the drayman at Ottawa, whom

he had employed, to take them out of the car and into the drayman's storehouse. We think the evidence in the case, both with reference to the sale and with reference to the delivery of the goods to appellant, clearly preponderates, to establish these two important facts in the case.

The giving of the second instruction is assigned as error by appellant. The instruction is as follows: "You are instructed that if you believe from the evidence that Bronson was the local manager of the Anheuser-Busch Brewing Association, at Streator, but as such, had no authority to buy goods for it, but that Reeb thought Bronson had that authority and sold him goods believing at the time he was selling to the Anheuser-Busch Brewing Association, through Bronson, as its agent, and if you further believe from the evidence that Bronson promised to pay for said goods, but did not say whether he was buying for Anheuser-Busch Brewing Association or not, and made no representations in regard thereto, but concealed his lack of authority to make the purchase for said Brewing Association, then, in that state of the evidence, Bronson was individually liable for such goods and it made no difference if Reeb thought at the time that he was selling to the Anheuser-Busch Association, through Bronson as its agent."

This instruction purports to state the law involved in this case, pertaining to the personal liability of appellant as agent, and states it accurately. The point presented by the instruction is well settled. Justice Sutherland, in the case of *Mott v. Hicks,* 1 Cow. (N. Y.) 536, clearly defines the rule concerning this feature of the personal liability of agents, as follows: "It is perfectly well settled, that if a person undertake to contract as agent for an individual or corporation, and contracts in a manner which is not legally binding upon his principal, he is personally liable.   *   *   *   And the agent, when sued upon such a contract, can ex-

onerate himself from personal liability only by show-
ing his authority to bind those for whom he undertakes
to act. It is not for the plaintiff to show that he had
not authority. The defendant must show affirmatively
that he had.'' The definition given is quoted with
approval by our Supreme Court in *Wheeler v. Reed,*
36 Ill. 91; also in *Frankland v. Johnson,* 147 Ill. 525.
The personal liability of agents under circumstances
similar to this case was also affirmed in *Kadish v. Bul-
len,* 10 Ill. App. 566; *Rice v. Western Fuse & Explosive
Co.,* 64 Ill. App. 603.

We think the court properly refused to give appel-
lant's instruction No. 6, as presented, because under
the facts as proven it was undisputed that appellant
had no authority to purchase the goods in question;
and if the goods were purchased by him, under these
circumstances, he was personally liable therefor, even
though he may have purchased them as agent. The
modification made by the court was entirely proper
and pertinent, and there was no error in giving the
instruction as modified.

The court also properly refused appellant's instruc-
tion No. 18, because there was no evidence, and no issue
in the case, upon the question whether or not the
appellee contracted with appellant as agent of the
Anheuser-Busch Brewing Association upon the appel-
lant's representation that he was duly authorized to
make the purchase in question, as their agent; the
count of the declaration presenting such an issue had
been stricken from the files, at the conclusion of the
evidence for appellee, and was out of the case; and
there was no evidence whatever, of any representation
made by appellant or any authority as agent, to pur-
chase the goods in question.

Error is also assigned on some of the remarks of
appellee's attorney in his closing argument. These
remarks were objected to by appellant, and they were
improper, and the court sustained the objection. But

the remarks, while improper, were not of such a prejudicial character that they could have unduly influenced the jury in arriving at a decision on the merits of the case.

This case, however, was not a proper one for the allowance of interest. There was no evidence of what legally would constitute an unreasonable and vexatious delay in making payment of the appellee's claim. The right of appellee to recover is a disputed matter, both as to the law and the facts involved, and it is evident that the delay in payment was occasioned by the defense made by appellant.

"To appear and defend a suit is a right which cannot be construed into 'unreasonable and vexatious delay of payment,' without impairing the right itself." (*Aldrich v. Dunham,* 16 Ill. 404.)

Mere failure to pay a demand will not necessarily constitute the delay in payment unreasonable or vexatious. (*Pieser v. Minkota Milling Co.,* 94 Ill. App. 595.)

It is clear, therefore, under the state of evidence in this case, the allowance of interest was not a question for the jury, and should not have been submitted to them. (*Hatterman v. Thompson,* 83 Ill. App. 217; *Sammis v. Clark,* 13 Ill. 544; *Aldrich v. Dunham, supra; Franklin County v. Layman,* 145 Ill. 145; *Devine v. Edwards,* 101 Ill. 138.)

For the reasons stated, the appellee is not entitled to judgment for more than the amount of his claim, without interest, which is $253.90; but having heretofore entered a remittitur to reduce the judgment to the amount above stated, the error in this regard is cured, and there is now no reversible error in this case, and the judgment should therefore be affirmed, in the sum of $253.90 at the costs of appellee.

*Affirmed.*