MILWAUKEE CHEESE COMPANY, Plaintiff-Appellee, *v.* ROCKFORD CARRIAGE HOUSE, INC. *et al.,* Defendants-Appellants.

(No. 70-185;

Second District—July 16, 1971.

North, North & Ohlson, of Rockford, (David A. North, of counsel,) for appellants.

Sype & Kalivoda, of Rockford, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

Rockford Carriage House, Inc. has brought this appeal from a judgment that was entered in favor of the Milwaukee Cheese Company by the Circuit Court of Winnebago County after a trial without a jury. The court also entered judgment in favor of Rockford as against a third party defendant, Food Service Management, Inc. Rockford maintains that the judgment was against the manifest weight of the evidence and that the trial court was in error when it found that Rockford had clothed Food Service with the apparent authority to contract indebtedness on its behalf.

On August 1, 1967, Rockford opened a restaurant on North Main Street in Rockford called the "Rockford Carriage House". Shortly thereafter Mr. James Marconi, a salesman from the Rockford office of the Milwaukee Cheese Company and brother-in-law of a shareholder of Rockford, called at the restaurant and solicited their business for the sale of cheese, salad dressings and other food preparations. Thereafter Marconi called regularly at the restaurant and obtained orders from the manager or, in his absence, the chef. Regular statements were sent to the restaurant and, presumably, paid.

On May 31, 1969, Rockford entered into a written agreement with Food Service whereby, as of June 1, 1969, the latter would "* * * operate, manage and supervise, on Carriage House's behalf, all of the food service * * *" and related activities of the restaurant. The agree-

ment also provided that Food Service would thereafter purchase all food-stuffs and be responsible for their payment.

In early June, Marconi noticed a change in the operation of the business and was informed that it was under new management. He turned the account over to his supervisor because, he testified, his hours did not coincide with those maintained by the new manager. On June 19, Rockford wrote to Milwaukee and advised that as of June 1 the restaurant was under new management and promised to pay the balance due on their account through May within 6 weeks. They also requested that all correspondence relative to billings prior to that date be sent to an address on State Street in Rockford. On August 26 Rockford again wrote Milwaukee and after an apology asked for an extension of the time in which to pay the old balance.

Milwaukee continued to take orders from the restaurant and send monthly statements directly to the Main street address. Checks were received on a few occasions, marked Food Services Corporation, Inc. but the unpaid balance of the account accumulated until late November, 1969 when the then manager at the restaurant requested that service be discontinued until the existing stock was depleted. In January, 1970 the restaurant closed and Food Services eventually went bankrupt.

Milwaukee Cheese brought suit against both Rockford and Food Services for $2774.52 for the unpaid balance on the food supplies furnished to the restaurant of which $595.98 was for the period prior to June 1. Rockford filed a third party complaint against Food Services for the difference, $2178.54, on the basis of the indemnification provisions of their written agreement. The trial court found that under that agreement Food Services was an independent contractor but that Rockford had clothed Food Services with the apparent authority to bind Rockford for the payment of supplies purchased for the restaurant and entered judgment accordingly. Rockford admits they owe Milwaukee the $595.98 (which has apparently been paid) but appeals from the balance of the judgment.

Apparent authority has been defined by the Restatement of the Law, Agency, Second at Section 8 as "\* \* \* the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." The doctrine has been consistently accepted as law in Illinois. *Wing v. Lederer*, 77 Ill.App.2d 413, 417; *Lawcock v. United States Trotting Assn.*, 55 Ill.App.2d 211, 216.

Rockford Carriage calls our attention, however, to the comment appearing in sub-paragraph (6) under the Restatement that "Apparent

authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized" and to our decision in *Wing v. Lederer, supra,* and other cases to the same effect. They maintain that in fact Milwaukee Cheese was furnished sufficient notice to, at the least, require that they make further inquiry as to the scope of the assumed authority of Food Services.

A Mr. Al Zullo, a shareholder of Rockford Carriage, testified that he advised Marconi in June that the restaurant was under new management and that "* * * we didn't have anything else to do with it." The conversation took place in the kitchen of the restaurant. Zullo admitted that there was a lot of people in the kitchen, that it was in "confusion", and that he was in a hurry to get away. Marconi did not recall the conversation.

Rockford contends that, under the circumstances, it was not reasonable for Milwaukee Cheese to believe that they would be responsible for the payment of any billings after June 1. In support of this contention, they point to the letters of June 19 and August 26, the checks received on account from "Food Services", the relationship of Marconi to one of Rockford's other shareholders, and the conversation between Zullo and Marconi.

There is no definite, uncontradicted evidence, however, that Milwaukee Cheese was ever notified that Rockford Carriage House would not be responsible for the bills after June 1. The letters, on which great reliance is placed, state only that the restaurant was under new management. It would not be surprising, under the circumstances, if Marconi did not hear or misunderstood Zullo's hurried message in the kitchen. There is uncontradicted evidence, on the other hand, that the restaurant continued in operation after June 1 under the same name, at the same location, with the same fixtures, same signs, same glassware and most of the same personnel. Milwaukee continued to take orders after June 1, as before, from the manager, his chef, or by telephone and to send monthly statements directly to the restaurant. It is admitted that they had no knowledge of the contract between Rockford and Food Services. Under the circumstances, the finding of the trial court that Rockford had "clothed" Food Services with the apparent authority to continue to purchase supplies from Milwaukee Cheese in the same manner as Rockford had done in the past was not against the manifest weight of the evidence and the judgment will be affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.