Don Slape, Trading as Don Slape Drilling Company, Plaintiff-Appellee and Cross-Appellant, v. Lillian B. Fortner, as Executrix of Last Will and Testament of William G. Fortner, Deceased, Defendant-Appellant, and Joe F. Van Natta et al., Defendants-Appellees.

Term No. 54–M–4.

340

Opinion filed October 6, 1954. Released for publication November 4, 1954.

PYLE & McCALLISTER, of Carmi, for appellant.

MARION M. HART, of Benton, and DAVID A. WARFORD, of Marion, for plaintiff-appellee and cross-appellant.

FEIRICH & FEIRICH, of Carbondale, for appellees.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

William G. Fortner, now deceased, entered into a written contract with Don Slape, a well driller, for the sinking of an oil well on certain premises in Indiana. At that time the defendants, Joe F. Van Natta, Phillip M. Kimmel and A. G. Storme, were the purported oil lessees of the premises, subject to Fortner's overriding royalty of one-fourth of the seven-eighths working interest therein.

When the well drilled by Slape was completed, it proved to be a dry hole, and nobody was willing to pay for it. Slape then filed this suit against Fortner and the lessees above named. Fortner answered, claiming that he acted only as agent for the other defendants. The other defendants answered, asserting Fortner had no authority to bind them. The death of Fortner occurred before trial, and his executor was substituted as defendant, thereby introducing the usual complications which arise under the Evidence Act.

The case was heard by the court without a jury and resulted in a judgment for the plaintiff for $9,902.28

342

against Fortner's executor alone, the other defendants being absolved of liability. The executor took this appeal, and is hereafter referred to as appellant. The plaintiff, seeking judgment against the other defendants, cross-appealed, and is called cross-appellant, while the other defendants are referred to as appellees.

The drilling contract introduced in evidence does not contain the names of appellees in the body thereof, the caption naming the parties thus: "William G. Fortner as Agent and, as Operator, and Don Slape as Contractor." However, beneath Fortner's signature appear these words: "Operator and Agent for Joe F. Van Natta, Phillip Kimmel and Albert G. Storme." The cross-appellant relies upon this wording as evincing an intent to bind the purported principals, as well as the agent individually.

It is undisputed that prior to the date of this drilling contract, all of the defendants had signed a written agreement purporting to designate Fortner agent of the other parties, and which provided that he was to proceed with the development of the leaseholds, which included some 1400 to 1600 acres, to contract for the necessary services, and to make all arrangements, at no cost to himself, all the expense to be paid by the others. But appellees contend that their signatures were affixed for a special purpose pursuant to representations of Fortner, hereafter stated. They assert that the contract contained a blank in one paragraph; and that it had been agreed by all the signatories the contract was not to become effective until this blank had been filled in and initialed by all the parties. The paragraph containing the blank is as follows:

"4. It is further understood and agreed by and between the parties hereto that the said party of the first part shall have the right to contract for the drilling of said wells and for the payment of the same for which the said parties of the second part bind them-

343

selves, their heirs, administrators and assigns to pay in a sum not exceeding ............ Dollars."

In behalf of appellees, testimony of an attorney named Prosser was introduced, purporting to relate the conversations between these parties, which, if admissible and if true, tends to support the following history, upon which appellees rely: Appellees had gone to Indiana and there, apparently with the help of Fortner, negotiated the acquisition of the oil rights in question for some $3,000 from a man named Hayden. Fortner brought the assignments to Illinois made out in his name alone. However, he agreed to assign them to appellees at once, but asked that they enter a contract making him the agent to develop the property.

As inducement, he stated that he knew of other prospective investors, and, out of the total area, he could sell one-half the oil rights in a tract of 147 acres (which he pointed out on a map) for enough money to pay the cost of drilling a well. During further negotiations, he urged appellees to put up the money for drilling, but they refused, and he then requested that they sign a copy of the contract, leaving the one paragraph blank, to show he represented these people. He was sure he could realize enough to drill a well. He explained that the exact amount of the sale would be inserted in the blank space, and all parties would then affix their initials, and sign all the copies.

Mr. Fortner had his attorney prepare the final draft of the contract and one copy was signed. There is no testimony as to what was said at the time of signing. The document bears a notarial certificate dated July 6, 1949, and the drilling contract signed by Fortner and Slape is dated four days later.

It was proved that Fortner showed Slape the document signed by appellees, that Slape saw the blank space therein but attached no significance to it, and made no further inquiries.

The testimony of Prosser is not directly contradicted, but it is here argued that it was not admissible, it was incredible, and is controverted by the acts of the parties. Reference is made to the principle that the contemporaneous construction by the parties is the best evidence of their intent, and it is also urged that their acts amounted to a ratification of the contract.

In support of the last points, there is evidence that appellees were present at the drilling of the well and made no protest. And about three weeks later they sent a telegram to Fortner saying, "Don't start any action on any of our oil leases until further notified by us." This was followed by a letter stating that they had held a meeting and "unanimously voted to dispense with your services." Counsel reasonably inquire why anyone should purport to terminate an agency which did not exist.

It being apparent that the real controversy over the agency contract was between Fortner's executor and appellees, the trial court held that appellees were not competent witnesses in their own behalf, but also held that attorney Prosser was competent. This lawyer was a brother-in-law of appellee Kimmel, the latter having married a sister of the witness. The witness stated that he advised only as to the legal form of the contract, and at his suggestion there was included a provision giving appellees the right to terminate the contract on notice. His competency was challenged on the ground of interest, and his testimony objected to as in violation of the parol evidence rule. These objections will be considered first.

As to his competency, we have no doubt. The witness was not made incompetent by reason of his relationship by marriage to one of the real parties in interest, nor by his having acted as legal advisor for some or all of them. He was not a party to the suit, nor otherwise shown to have any direct interest therein.

345

Against an executor, the statute, sec. 2, chap. 51, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 107.068], makes incompetent as a witness a party to the suit or a person directly interested in the event thereof. While this has been held to make the spouse of a party incompetent, it has never been extended to any other degree of relationship, even if the witness is an apparent heir of a party, such as a child. *Williams v. Garvin*, 389 Ill. 169. And a lawyer's interest in the financial success of his client is not sufficiently direct to disqualify. *Britt v. Darnell*, 315 Ill. 385. The courts have shown no disposition to extend by construction the statutory rule, and have consistently held that to disqualify, the interest must be certain, direct and immediate. *Brownlie v. Brownlie*, 351 Ill. 72.

██ While the parol evidence rule prohibits varying the terms of a written contract by parol, it does not preclude admission of evidence to show that the delivery thereof was conditional. The testimony of the witness, Prosser, was to the effect that only one copy of the contract had been signed, that this was done for a special purpose, that there remained a further condition to be performed, and when that was done, the blank would be filled in and initialed, and all copies of the contract signed. This is evidence of a conditional delivery, and is admissible. *Bell v. McDonald*, 308 Ill. 329; *Kilcoin v. Ortell*, 302 Ill. 531; *Jordan v. Davis*, 108 Ill. 336.

██ As to the effect of the blank space in the agency contract, appellant suggests that the case of *Church v. Noble*, 24 Ill. 291, be applied. That was a suit on a bond conditioned for the payment of . . . dollars. The court construed this to mean "no dollar." Appellant argues that the same construction in this case leaves the contract complete but with no limit on the agent's authority to contract. The citation does not support

346

such a rule. The court said, p. 293, "We interpret this to mean that . . . dollars are the measure of damages agreed upon by the parties, and they are no dollars and therefore nothing was to be paid." The same interpretation in the case at bar would make the parties agree that appellees were obligated to pay not more than no dollars, and therefore nothing was to be paid by them.

There are few reported cases dealing with the effect of blanks in a written agreement. In 17 C. J. S., Contracts, sec. 65, it is said, "A writing is incomplete as an agreement where blanks as to essential matters are left in it, unless they can be supplied from other parts of the writing itself, or, unless and until such blanks are lawfully filled. The fact, however, that a contract contains blanks when signed does not necessarily invalidate it . . . Blanks in an instrument may be rejected as surplusage if the parties so intended, and the intent must be gathered as an inference of fact from the whole setting of the transaction."

■ Accordingly, we do not hold that the mere existence of a blank in a writing is necessarily sufficient of itself to nullify the document. However, it is a circumstance to be considered in the light of the whole contract and the other evidence bearing thereon; in this case, the testimony of Prosser. Its effect on a third party is hereafter considered.

■ Thus the blank in the contract and the testimony as to its purpose must be weighed against the evidence as to the conduct of the parties. The only evidence of any knowledge on their part of the drilling contract is the bare statement of appellant that some of appellees were present during drilling operations. He gave the date of such attendance as August 7th or 8th, but he had previously testified that drilling had been completed on August 3rd, which is somewhat inconsistent.

The communications sent by appellees weigh against them, but the weight is reduced by absence of convincing proof as to knowledge of the situation. In order to bind a principal by ratification, it must be shown that he had full knowledge of the facts. *Farmers National Bank v. Trautwein,* 228 Ill. App. 356; 2 Am. Jur., Agency, sec. 224.

■ The credibility of Prosser is further attacked by argument, some of which is based on a false premise, i. e., that Fortner assigned the leases to appellees without consideration other than the agency contract. This is contrary to undisputed testimony indicating that appellees had paid some $3,000 for the leases so that Fortner had no right to have them in his name.

■ The principal argument is, that it is unreasonable to expect that an interest in the oil rights of 147 acres could be sold for enough to drill a well. We have no knowledge on that subject, there is no evidence on it, nor anything other than inferences that appellees had any knowledge about it. It might be supposed that special conditions pertaining to this acreage could make it appeal to an investor who was uninterested in a thousand acres nearby. On the other hand, it may be that if Fortner was bluffing, and was acting in the hope of bringing in a good well which would discourage any objections to his conduct, the appellees were not, or should not have been, deceived. And, of course, the purported conversations may be purely fabricated.

■ Obviously, the problem is strictly one of fact devolving upon the credibility of two witnesses and the gullibility of parties not permitted to testify. A close question is presented and, since the credibility of witnesses and the weight to be given their testimony is primarily for the trier of facts, this court will not .undertake to substitute its judgment for that of the trial court. A judgment will not be reversed on a factual question, unless it is contrary to the manifest

348

weight of the evidence. *Wohlwend v. Fosse,* 345 Ill. App. 434; *In re Estate of Niehaus,* 341 Ill. App. 454. The decision of the trial court that Fortner had no authority to bind appellees on the drilling contract is within the scope of the evidence and is sustained.

As to cross-appellant, the question is whether he is bound by the purported agent's lack of authority, so that he cannot recover from the principals, even though he expected to hold them responsible. The general rule is that persons dealing with an assumed agent are bound at their peril to ascertain not only the fact of the agency but the extent of the agent's authority. *Paine v. Sheridan Trust & Savings Bank,* 342 Ill. 342; *James v. Union Nat. Bank,* 238 Ill. App. 159. The *Paine* case also holds that whether a person has notice of lack of authority, or is put on notice by circumstances, is a question of fact and not one of law. To the same effect: 2 Am. Jur., Agency, sec. 99.

"A third person who, in dealing with an agent, has knowledge or notice that the agent's authority is conferred on him by an instrument in writing must inquire and ascertain as to the limits of the authority as stated in writing but ordinarily not further."—"the third person is bound to construe the terms of written authority at his peril, as well as to know them." 2 C. J. S., Agency, sec. 92b.

Here the third person knew he was dealing with one purporting to act under written authority. He saw the blank which had reference to the limit of authority as to the very contract under negotiation. His failure to make further inquiry presents a question of fact whether he used reasonable care in ascertaining the facts of the agency, and is sufficient to justify the finding against him on that point.

Finally, as to the appellant, the rule is that if an agent makes a contract which he has no authority to make, he binds himself personally, according to the

terms of the contract. *Vulcan Corp. v. Cobden Machine Works*, 336 Ill. App. 394; *Reeb v. Bronson*, 196 Ill. App. 518; *Frankland v. Johnson*, 147 Ill. 520.

■■ The evidence was sufficient to justify the court in finding that the agency contract was incomplete, and not yet effective to authorize a drilling contract, and that cross-appellant was reasonably put on inquiry as to that condition; accordingly the judgment for appellees is affirmed. It is clear that appellant is liable in any event, and the judgment for plaintiff to be paid in due course of administration is likewise affirmed.

*Judgments affirmed.*

CULBERTSON, P. J. and BARDENS, J., concur.