Gladys Lawcock, Plaintiff-Appellee, v. United States Trotting Association, et al., Defendants.
On Appeal of Matthew Long, Defendant-Appellant.

Gen. No. 49,697.

First District, First Division.

January 25, 1965.

Rehearing denied February 18, 1965.

Chester L. Chowaniec, of Chicago (Harry G. Fins, of counsel), for appellant.

Thomas J. McGrath, of Homewood and Jerome H. Torshen, of Chicago (Jerome H. Torshen, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant, Matthew Long, appeals from a declaratory judgment, entered after a nonjury trial, in which the court found and declared that "the plaintiff Gladys Lawcock is the sole and exclusive owner of the horse Ione's Boy." Defendant contends that plaintiff failed to prove the authority of an alleged agent to sell the horse.

Plaintiff, Gladys Lawcock, defendant, Matthew Long, and defendant's alleged agent, Jimmy Cruise, all own, train and race horses. In October, 1962, plaintiff met Cruise in California and asked him if

he had a horse which she could race. Cruise told her about Ione's Boy, a horse then in his possession and not active in racing. Thereafter, under date of October 9, 1962, a written agreement was entered into for "a certain registered standard-bred [horse] named Ione's Boy from the date hereof to the 1st day of December, 1963." The agreement, in evidence, is entitled "Lease and Option," and bears the signatures of "Gladys Lawcock" and "Jimmy Cruise, agt." It provides that during the year, plaintiff was to pay all the necessary expenses incurred in keeping and training the horse and to retain all of the horse's winnings. The agreement also includes an option "to purchase said animal, at any date of this lease, for the sum of $1,000 and such option shall be exercised by the lessee giving notice in writing to the lessor by registered mail and addressed to the lessor at his residence in Westbury, Long Island, N. Y."

Plaintiff received the horse about October 5, 1962, and up to that time it had not won any races. It had sores on its shoulders and back and under its fetlocks. After months of care and special training, plaintiff raced it at "Vernon Downs," where it won two races and finished second three times. In August, 1963, plaintiff attempted to exercise her option to purchase, and "I sent Jimmy the check right away, . . . and Jimmy sent this check back."

Plaintiff then took the horse to Washington Park, Illinois, and it won again. At this point, Matthew Long appeared for the first time and attempted to take the horse. Long testified that during the discussion about the possession of Ione's Boy, a tender of $1,000 was made by plaintiff's attorney, which was refused by Long. He stated, however, that plaintiff could "have the horse for the balance of the year and she could keep the winnings of the horse for the term of the lease."

 Initially, we agree with plaintiff that a reviewing court will not disturb the findings of a trial court unless they are manifestly against the weight of the evidence. We also agree that where the trial court has seen and heard the witnesses, and their testimony is contradictory, this court will not substitute its judgment as to the credibility of the witnesses for that of the trial court. (Brown v. Zimmerman, 18 Ill 2d 94, 102, 163 NE2d 518 (1959).) Although the latter principle is applicable to the testimony of plaintiff and defendant, which was given in open court, it should be noted that it is not applicable to the testimony of Jimmy Cruise, which was given by an evidence deposition.

As plaintiff's claim to ownership of Ione's Boy is based on the "Lease and Option" agreement, the first issue to be considered is whether the agreement bears the genuine signature of Cruise. The testimony of both plaintiff and Cruise is somewhat less than positive or direct. However, in order to reach the principal issues, we will assume that Cruise signed the agreement.

 As it is not disputed that Cruise was the agent of defendant Long for some purposes, the determinative issue is whether Cruise possessed actual or apparent authority to give the option to purchase, included in the leasing agreement. The general rule covering "liability on contracts executed by agent" is stated in 3 Am Jur2d, Agency, § 268:

> "The general rule is that a principal is bound by, and is liable upon, a contract executed properly as to form by his agent, within the actual or apparent authority of the agent, and with the understanding that the agent is contracting on behalf of the principal. The principal is also liable if, with knowledge of all the material facts

215

attending the negotiation and execution of the contract, he effectively ratifies the contract of one who purported to execute the contract on his behalf. On the other hand, no person can be charged upon a contract alleged to have been made upon his responsibility unless it can be shown that he has given his express or implied consent to the making of that contract. It is a well-established rule, therefore, that the principal does not have a duty to perform, nor is he liable upon, a contract which he has not actually or apparently authorized and has not ratified."

■ The testimony as to the actual authority of Cruise is summarized by the following. Plaintiff testified, "I did not discuss with Mr. Cruise the ownership of Ione's Boy. My impression was that he was representing an owner, but I didn't know." The defendant testified, "I had no intention of ever selling the horse. . . . I never gave any permission, oral or written or otherwise, for Jimmy Cruise to enter into any kind of an arrangement for the sale of Ione's Boy. I never gave Jimmy Cruise any authority whatsoever to enter into any sort of an arrangement, oral or written, for a lease with an option to sell Ione's Boy." Jimmy Cruise, in his evidence deposition, testified, "Mr. Long did not give me authority to sell the horse Ione's Boy." Considering the foregoing, we hold plaintiff did not prove the existence of *actual authority* in Cruise, as an agent of defendant Long, to sell the horse.

■ *Apparent authority* "to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." (Restate-

ment of Agency 2d, § 27, p 103.) Apparent authority in an agent to do an act for his principal must be based on the words and acts of his principal and cannot be based on anything the agent himself has said or done. 1 ILP, Agency, § 112; Levinson v. Fidelity & Cas. Co. of New York, 348 Ill 495, 506, 181 NE 321 (1932).

█ The record does not indicate any conduct of defendant Long, prior to or at the time of the agreement, which could have led plaintiff to reasonably believe that Cruise had authority to give her the option to purchase the horse. The placing of Cruise in possession of the horse, and not clothing him with any other indicia of ownership, was not sufficient to confer apparent authority on Cruise to sell the horse. "Generally speaking, . . . the mere possession of personal property by an agent or employee does not confer on him ostensible authority to sell, and a sale under such circumstances does not confer title as against the principal, even though the buyer is a bona fide purchaser. . . . There must be some other indicia of ownership than mere possession; there must be some act or conduct on the part of the owner whereby the party selling is clothed with the apparent ownership or authority to sell." 3 Am Jur2d, Agency, § 100.

Plaintiff's testimony indicates that she did not know, at the time of entering the agreement, that defendant Long was the owner of the horse or that he was the principal for whom Cruise was presumably acting as agent. Plaintiff thought that Cruise was acting as an agent, but did not attempt to verify the fact or ascertain the scope of his agency. She testified, "I did not discuss with Mr. Cruise the ownership of Ione's Boy. My impression was that he was representing an owner but I didn't know. . . . I never asked him [Cruise] whether he owned the horse. . . .

I never bothered to ask who owned the horse; I thought it was Jimmy's boss."

Defendant Long, not having engaged in any conduct which could have been reasonably construed by plaintiff as clothing Cruise with apparent authority to sell the horse, is not estopped from denying the existence of such apparent authority. We think the rule to be applied here is that "a third person dealing with a known agent may not act negligently with regard to the extent of the agent's authority or blindly trust the agent's statements in such respect. Rather, he must use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with him within the scope of his powers. The mere opinion of an agent as to the extent of his powers, or his mere assumption of authority without foundation, will not bind the principal; and a third person dealing with a known agent must bear the burden of determining for himself, by the exercise of reasonable diligence and prudence, the existence or nonexistence of the agent's authority to act in the premises." (3 Am Jur2d, Agency, § 78.) We find the record does not show that Cruise had apparent authority to give to plaintiff an option to purchase the horse, and we conclude that plaintiff did not "use reasonable diligence and prudence" to determine whether Cruise was acting within the scope of his authority.

Plaintiff also contends that Cruise's authority to grant on option to purchase can be *implied* from his authority to lease the horse, because "such sale is incidental to such transaction [lease], usually accompanies it, or is reasonably necessary in accomplishing it. 3 Am Jur2d, Agency, § 99. It was highly unlikely that Ione's Boy could have been leased to anyone who would be required to make large expenditures in

218

conditioning the horse if an option to purchase the horse was not given with the lease."

■■■ No evidence was introduced showing that an option to purchase is "incidental," "reasonably necessary," or "usually accompanies" such leases. It does not seem "inconceivable" to us, as plaintiff argues, that a seasoned owner and trainer of horses would lease a sore animal for a year, without an option to purchase the horse, when he retains all the horse's winnings for that year. We are, therefore, not persuaded that authority to sell can be implied from the actual authority which Cruise may have possessed to lease the horse.

■■■■ As to ratification, we believe the evidence falls short of showing that Long did anything more than was consistent with the authority he admitted giving Cruise, which was to "try and find someone to take care of this horse, lease him for one year, and I agreed to that." Long did not "seek or retain the benefits" of an unauthorized sale, and did not, therefore, ratify it. As there is no dispute over the authority of Cruise to lease the horse, any benefits sought or retained by Long, which may have resulted from the lease, are irrelevant to the possibility of ratification of the option to purchase.

> "Ratification may be express, or it may be inferred from circumstances which the law considers equivalent to an express ratification. In the latter sense, ratification may be found to have taken place when the principal, with knowledge of the material facts of the unauthorized transaction, takes a position inconsistent with nonaffirmation of the transaction. An example of such ratification is for the principal to seek or retain the benefits of the transaction. Thus, it is ratification if the principal, with knowledge of the facts, sues the third party or agent 'to enforce

promises which were part of the unauthorized transaction or to secure interests which were the fruit of the transaction and to which he would be entitled only if the act had been authorized.' " Karetzkis v. Cosmopolitan Nat. Bank, 37 Ill App 2d 484, 490, 186 NE2d 72 (1962).

We conclude that the evidence in this case does not show that Cruise had actual, implied or apparent authority to give an option to purchase the horse, or that defendant Long had ratified the unauthorized act of Cruise.

For the reasons given, the judgment for plaintiff is reversed and judgment for defendant is entered here.

Reversed and judgment here.

BURMAN, P. J. and KLUCZYNSKI, J., concur.