LOU BACHRODT CHEVROLET, INC., Plaintiff-Appellant, *v.*
TONY GREVE *et al.*, Defendants-Appellees.

Second District  No. 75-223

Opinion filed May 19, 1977.—Rehearing denied June 27, 1977.

Peter DeBruyne, of Miller & Hickey, of Rockford, for appellant.

Raymond L. Watkins, of Kankakee, for appellees, *pro se.*

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant, Tony Greve, employed by Raymond L. Watkins d/b/a Beltone Hearing Aid Center, entered into a lease agreement with Lou Bachrodt Chevrolet, Inc., for two automobiles. Greve subsequently left the employment of Beltone and took the motor vehicles with him from Rockford to Kankakee. The lessor of the vehicles, Lou Bachrodt Chevrolet, Inc., filed suit against both Greve and Watkins, d/b/a Beltone Hearing Aid Center (hereinafter Beltone). In a bench trial the trial court entered judgment against the defendant Tony Greve and in favor of Beltone. On appeal by Bachrodt we reverse as to the finding of the trial court in favor of Beltone.

The basic question presented in this case is the apparent or implied authority of Greve, the employee of Beltone.

The defendant Greve, a nephew of Mrs. Watkins, the wife of the defendant Raymond L. Watkins, was employed in the Rockford office of Beltone. The employees or salesmen of Beltone were referred to as "consultants." On October 13, 1971, Greve telephoned Lou Bachrodt Chevrolet and advised a Mr. Jefferies, who was the fleet and leasing manager of Bachrodt, that he wished to lease a car. He advised Jefferies that he was the manager of Beltone and later that day he personally contacted Mr. Jefferies relative to the leasing of the motor vehicle. According to the testimony of Jefferies, Greve was given an "Assumption of Liability Agreement" form with the words "Beltone Hearing Aid Center" typed on the same which was returned to Bachrodt signed by Greve. Jefferies testified he in turn called Beltone, talked to Mrs. Watkins, and stated to her that he needed credit information on Beltone. Mrs. Watkins in turn inquired of him with regard to licensing, sales tax, maintenance and insurance. Mrs. Watkins did not recall the credit call but did recall asking him about a 50-mile radius limitation on the use of the car. During this phone call Mrs. Watkins did not advise Jefferies that Greve was not the manager. The comptroller of Bachrodt, Mr. Klinger, testified he called Beltone and also spoke to Mrs. Watkins and advised her that a Beltone manager had been at Bachrodt talking about leasing an automobile. Klinger asked for credit references and Mrs. Watkins gave him the name of two banks in Rockford and one in Kankakee relative to the credit of Beltone and Watkins, Again, there was no indication that Greve was not the manager or that he did not have authority to enter into a lease on behalf of Beltone.

On October 15, 1971, a Camaro automobile was picked up by Greve. Subsequently a 1972 Vega was substituted for the Camaro. Beltone was billed for the sum of $50 for the rental of the Camaro from October 15, 1971, to November 1, 1971. On November 1, 1971, Greve executed a document in which he stated he was leasing automobiles from Lou

Bachrodt Chevrolet Leasing Co. as his own responsibility and "in no respect making anyone else liable, including Beltone Hearing Aid Center or Mr. and Mrs. Raymond L. Watkins." This document was admitted into evidence over objection. At no time was this disclaimer of liability as to Beltone or the Watkins ever forwarded to Bachrodt. On November 11, 1971, the $50 invoice was paid with a check from Beltone. On December 3, 1971, a "Motor Vehicle Lease Agreement" and a "Vehicle Lease Order" were mailed to Beltone and subsequently were returned to Bachrodt signed by Greve as "Consultant" and "Consultant and Manager." Beltone was invoiced for the use of the motor vehicle for the month of November in the sum of $100 and again Beltone, on December 7, 971, issued their check and paid this invoice in the sum of $100. Subsequently Beltone was invoiced for the month of December for the use of this vehicle for two months and again this invoice was paid by Beltone's check in the sum of $221.16. Likewise, on January 31, 1972, Bachrodt again billed Beltone for the use of the vehicle and Beltone issued their check in the sum of $110.58 on February 22, 1972. These payments were authorized by Mr. Watkins and were made out on Beltone checks and signed by Mrs. Watkins.

In early February Greve telephoned Jefferies, the leasing manager of Bachrodt, and advised him that his wife was going to work for Beltone and that they needed another vehicle. On February 11, 1972, Greve signed a "Vehicle Lease Order" for a 1972 Monte Carlo. This document was signed by Greve with the title "Beltone" typed under his name. Greve left the employ of Beltone on February 18, 1972. He took both cars with him and Beltone refused to make any payments on the rentals of both cars to Bachrodt. After negotiations the Vega was returned to Bachrodt by Greve on June 19, 1972, and the Monte Carlo on July 24, 1972.

We thus reach the question as to whether Bachrodt has established that Greve was held out to be an implied or apparent agent of the defendant Beltone. We find that the apparent agency was in fact established by the evidence in this case.

In *Faber-Musser Co. v. Dee Clay Manufacturing Co.* (1920), 291 Ill. 240, 246, 126 N.E. 186, 189, the court stated:

> "Circumstantial evidence is ordinarily competent to establish the fact or extent of agency. [Citation.] In case of doubt as to the extent of the agency and the authority of the agent to bind the principal, 'reference may be had to the situation of the parties and property, usages of the country on such subjects, the acts of parties themselves, and any other circumstances having a legal bearing and throwing light on the question.' "

In *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 518, 170 N.E.2d 569, 573, the court again stated:

> "Agency may be established and its nature and extent shown by

parol evidence, whether direct or circumstantial, and reference may be had to the situations of parties and property, acts of parties, and other circumstances germane to the question, and if the evidence shows one acting for another under circumstances implying knowledge on the part of the supposed principal of such acts, a *prima facie* case of agency is established."

See also *Mitchell v. Sherman E. McEwen Associates, Inc.* (1935), 360 Ill. 278, 283, 196 N.E. 186, 188.

■■ In a factually different case, the United States Circuit Court of Appeals in *Alterman v. Lydick* (7th Cir. 1957), 241 F.2d 50, 53, the court discussed the *Faber-Musser* case and set out the definition in the Restatement of Agency §38, comment (a) (1933):

" 'An apparent agent is a person who, whether or not authorized, reasonably appears to third persons, because of the manifestations of another, to be authorized to act as agent for such other.' "

The court went on to say that apparent authority is to be distinguished from implied authority which is defined as "actual authority circumstantially proved." It was also said that although an agent might exceed his actual or implied authority, there was no doubt that he could bind his principal by the commission of acts which fell within the ambit of his apparent authority. The court held that the agent in that case, although admittedly without actual authority, nevertheless was clothed by the defendant with certain indicia of authority which would, in fact, bind the principal.

■■ In *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 647, 334 N.E.2d 431, 434, the court considered the authority of the agent to bind the principal and stated:

"An agent's authority may be presumed from silence of the alleged principal when he knowingly allows another to act for him as his agent, and the agent's scope of authority may be determined by what persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent, might rightfully believe him to have on the basis of the principal's conduct."

In the case before us it is undisputed that Watkins, being the sole proprietor of Beltone agency, was or should have been fully conversant with the fact that Greve had in fact represented that he was leasing a car in the name of and for Beltone. The testimony of Klinger, the comptroller for Bachrodt, was that he contacted Mrs. Watkins relative to the credit rating of Beltone and was given the names of three banks which he in turn contacted as to the credit of Beltone. It is obvious that this information was given to him by Mrs. Watkins in response to his inquiry as he obviously would not know the name of the banking institutions with which Beltone was doing business. Klinger testified that the "manager" of

Beltone had contacted them for leasing an automobile for Beltone. Mrs. Watkins did not advise him that Greve was not in fact the manager. While it is true that Watkins or his wife did not sign the leasing agreements with Bachrodt, it is obvious that they subsequently condoned the same by the issuing of checks in payment of the leasing charges for a period of 4-5 months, the checks being Beltone checks, authorized by Mr. Watkins and signed by Mrs. Watkins. Mr. Watkins testified that the "Assumption of Liability Agreement" was given to him by Greve and that he refused to sign it. At best this would alert the principal, Watkins, and it is apparent that Watkins knew or should have known, that his employee was dealing with Bachrodt as the agent of Beltone under the apparent authority to lease a vehicle for Beltone. This is further indicated by the fact that Greve executed a document which would absolve Beltone from liability on the leased vehicle and that this document was never delivered to Bachrodt. A principal is bound by the acts of his agent, where the principal has clothed the agent with apparent authority to do the acts notwithstanding secret instructions given by the principal to the agent, or undisclosed limitations placed upon the agent's authority by the principal. (1 Ill. L. & Prac. *Agency* §112 (1953), and cases cited therein.) After the leasing documents were executed in various forms by Greve with Bachrodt, Beltone issued their checks to Bachrodt for the lease charges for the motor vehicle in question as indicated above. As the courts of this State have stated repeatedly, the nature and extent of the agency may be shown by parol evidence concerning the situation and acts of the parties, as well as any other relevant circumstances. (*City of Evanston v. Piotrowicz; Mitchell v. Sherman E. McEwen Associates, Inc.; Faber-Musser Co. v. Dee Clay Manufacturing Co.*) From the facts of this case and the situation of the parties and the circumstances germane to the question, we find that the defendant Greve was the apparent agent of Beltone. Watkins, after being alerted that Greve was in fact leasing cars under the name of Beltone or on behalf of Beltone, did nothing to dispel the apparent agency and in fact compounded the agency by the issuance of the checks in payment for the use of one of the vehicles in question.

In view of our conclusion upon this issue, we find it unnecessary to discuss the other issues raised by Bachrodt.

The judgment of the trial court in favor of Raymond L. Watkins, d/b/a Beltone Hearing Aid Center, is reversed and judgment is entered against Raymond L. Watkins in the sum of $5,707.38.

Reversed.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.