JAMES A. SCHOENBERGER, JR., Plaintiff-Appellant, *v.* CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (1st Division)   No. 79-366

Opinion filed May 5, 1980.

James A. Schoenberger, of Hinsdale, for appellant, *pro se.*

Edward J. Egan, of Chicago, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff, James Schoenberger, brought a small claims action pro se in the municipal department of the circuit court of Cook County against the defendant, Chicago Transit Authority (hereinafter C.T.A.), to recover contract damages. The trial court ruled in favor of the defendant and against the plaintiff. The plaintiff appeals from this judgment. At issue is whether the C.T.A. may be held liable under agency principles for a promise allegedly made by an employee of the C.T.A. to the plaintiff at the time that he was hired to the effect that he would receive a $500 increase in salary within a specified period of time. We affirm.

Schoenberger was employed by the C.T.A. from August 16, 1976, to October 1976, at a salary of $19,300. The facts surrounding his employment with the C.T.A. are controverted. The plaintiff's position at the trial was that he took the job with the C.T.A. at a salary of $19,300 upon the condition that he would receive a $500 salary increase, above and beyond any merit raises, within a year. Schoenberger testified at trial that, after filling out a job application and undergoing an initial interview with a C.T.A. placement department interviewer, he met several times with Frank ZuChristian, who was in charge of recruiting for the data center. At one of the meetings with ZuChristian, the director of data center operations, John Bonner, was present. At the third meeting held between ZuChristian and the plaintiff, ZuChristian informed the plaintiff that he desired to employ him at $19,800 and that he was making a recommendation to this effect. Schoenberger told ZuChristian that he would accept the offer. ZuChristian informed him that a formal offer would come from the placement department within a few days. However, when the offer was made, the salary was stated as $19,300. Schoenberger did not accept the offer immediately. Rather, he called ZuChristian for an explanation of the salary difference. After making inquiries, ZuChristian informed Schoenberger that a clerical error had

been made and that it would take a number of weeks to have the necessary paperwork reapproved because several people were on vacation. To expedite matters, ZuChristian suggested Schoenberger take the job at the $19,300 figure and that he would see that the $500 would be made up to him at the April 1976, October 1976, or at the latest, the April 1977 performance and salary review. The $500 increase was to be prospective and not retroactive in nature. John Hogan, the head of the data center, was aware of this promise ZuChristian informed Schoenberger. Because the defendant was found to be ineligible for the October 1976 performance evaluation and the April 1976 review was cancelled, the April 1977 evaluation was the first evaluation at which the issue of the salary increase was raised. When the increase was not given at that time, the plaintiff resigned and filed this suit.

On cross-examination, Schoenberger admitted that he never inquired into ZuChristian's authority to discuss salary with him. However, he stated that he believed that ZuChristian's authority overrode the authority of the placement department, which he believed had only a "perfunctory" role in hiring. He further stated that the inconsistent offers from the data center management and the placement department were only indicative of the conflict which generally seems to exist between placement departments and the management of data centers. Schoenberger also stated that he regarded the $500 salary increase promise by the data center management to be a commitment by them on behalf of the C.T.A.

ZuChristian's testimony as to the events giving rise to Schoenberger's employment with the C.T.A. paralleled that of Schoenberger's except for a few key points. ZuChristian outlined the general procedures utilized by the data center in hiring new personnel. He stated that a recommendation is processed by the department manager after someone in the department had interviewed the applicant. The recommendation is forwarded to the employee relations department for review and then to the placement department. Under this procedure, he is not allowed to make an offer. He could, however, discuss the job with a prospective employee and tell him what salary he would recommend. ZuChristian testified that his supervisor had told him to make informal offers to prospective employees so the long placement procedure would not discourage applicants. He was to make it clear that the formal offer would come from the placement department. Schoenberger's application and employment with the C.T.A. followed the general hiring procedure. However, ZuChristian stated that when he told Schoenberger of his desire to hire him he intended him to consider this as an offer. He also stated that he lied to Schoenberger when he told him that the $19,300 salary offer was a clerical error. This story, he stated, was agreed upon by

his superior, John Hogan, and was to insure that Schoenberger would accept the lower salary approved by the employee relations department as the recommended salary for Schoenberger's position had been rejected. ZuChristian stated that the department occasionally negotiated with prospective employees for compensation above and beyond that which has been approved by the personnel department and stated that he was promised $200 above the formal salary offer made by the placement department when he was hired. This often occurred because the data center management tried to keep the salaries at a competitive level with the outside market while the placement department tried to keep salaries consistent within the C.T.A. ZuChristian also stated that he informed Bonner, his new immediate supervisor, about the $500 promised to Schoenberger in the fall of 1976 when ZuChristian's group was placed under Bonner's authority.

The C.T.A., on the other hand, contends that Schoenberger unconditionally accepted the job offer at $19,300 and that if ZuChristian made any promise to the plaintiff, he was without the authority to do so, and, therefore, the C.T.A. was not bound by the promise. Don Reece, the placement department interviewer who processed Schoenberger's application, stated that at the interview of the plaintiff that he conducted he made no offer of a particular salary. He did testify that Schoenberger told him at that time that he wanted $20,000 in salary. Reece stated that when he notified Schoenberger that the C.T.A. was offering him a position in the data center at $19,300 that Schoenberger accepted without objection.

John Hogan, the head of the C.T.A. data center, testified that salary is determined at a meeting between the department head of the prospective employee, the executive director, and a representative of the employee relations department. Hogan testified that he was unaware of any promise of additional compensation to Schoenberger until the issue was raised subsequent to Schoenberger's resignation. He denied having agreed to the "clerical error story" testified to by ZuChristian. He did state that he had recommended the $19,800 figure to the salary committee but that the recommendation was rejected. Hogan also testified that ZuChristian was not in a management position in the data center. He also stated that sometime after Schoenberger resigned, ZuChristian was asked to leave because his work had become unacceptable.

John Bonner, the director of systems development, stated that in September 1976, ZuChristian's department was transferred to his authority. At this time ZuChristian told him of the promise to increase Schoenberger's salary. He informed ZuChristian that he had possessed no authority to make such a promise and that it would not be honored. In October, Schoenberger informed Bonner of the promise. At this time

Bonner told him that there had been no clerical error and that no raise would be forthcoming. Bonner confirmed Hogan's testimony that ZuChristian had no authority to make offers to prospective employees.

The trial court, after hearing the evidence and reviewing the exhibits, ruled in favor of the defendant. The trial court ruled (1) that it was inconceivable that the plaintiff thought ZuChristian had final authority in regard to employment contracts; and (2) that it was not shown that a commitment or promise was made to the plaintiff by an authorized agent of the C.T.A.

A trial court's judgment in a bench trial will not be disturbed on appeal unless it is palpably contrary to the manifest weight of the evidence. (*Getzoff v. Paris* (1979), 77 Ill. App. 3d 401, 396 N.E.2d 260; *Wroclawski v. Waszczyk* (1976), 35 Ill. App. 3d 408, 342 N.E.2d 261; *Fisher v. City of Aledo* (1974), 23 Ill. App. 3d 190, 318 N.E.2d 305.) For a judgment to be found to be against the manifest weight of the evidence, the appellant must present evidence that is so strong and convincing as to completely overcome the evidence, and presumptions, if any, existing in the appellee's favor. (*Wroclawski v. Waszczyk.*) Moreover, the trial judge in a trial, without a jury acts as trier of fact and, therefore, determines the credibility of the witnesses. Accordingly, where the testimony is contradictory, the weight of the evidence is for the trial court. *Hill v. Hill* (1979), 79 Ill. App. 3d 809, 398 N.E.2d 98; *Crawford v. Anagnostopoulos* (1979), 69 Ill. App. 3d 954, 387 N.E.2d 1064; *Wroclawski v. Waszczyk*; *Fisher v. City of Aledo.*

■■ The main question before us is whether ZuChristian, acting as an agent of the C.T.A., orally contracted with Schoenberger for $500 in compensation in addition to his $19,300 salary. The authority of an agent may only come from the principal, and it is therefore necessary to trace the source of an agent's authority to some word or act of the alleged principal. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569; *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535.) Authority may be actual or apparent, actual being either express or implied. (*Chalet Ford, Inc. v. Red Top Parking, Inc.* (1978), 62 Ill. App. 3d 270, 379 N.E.2d 88; *Barraia v. Donoghue* (1977), 49 Ill. App. 3d 280, 364 N.E.2d 952; 3 Am. Jur. 2d *Agency* §69 (1962).) The authority to bind a principal will not be presumed, but rather, the person alleging authority must prove its source unless the act of the agent has been ratified. (*Wing v. Lederer*; *Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 186 N.E.2d 72.) Moreover, the authority must be founded upon some word or act of the principal, not on the acts or words of the agent. *Barraia v. Donoghue*; *Lawcock v. United States Trotting Association* (1965), 55 Ill. App. 2d 211, 204 N.E.2d 802.

■■ The plaintiff initially contends, citing *Elmore v. Blume* (1975), 31 Ill.

App. 3d 643, 334 N.E.2d 431, that a prima facie case of agency was established by the presentation of evidence that ZuChristian was an employee of the C.T.A., in charge of the recruiting function for the data center, and acting on behalf of his employer. Circumstantial evidence may establish a prima facie case of the fact and extent of an agency relationship. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569; *Winston v. Sears, Roebuck & Co.* (1967), 88 Ill. App. 2d 358, 223 N.E.2d 95.) As the court in *City of Evanston* noted:

> "* * * if the evidence shows one acting for another under circumstances implying knowledge on the part of the supposed principal of such acts, a *prima facie* case of agency is established." (20 Ill. 2d 512, 518.)

Here, however, the C.T.A. presented evidence to negate the prima facie case of agency established by the plaintiff. Both Hogan and Bonner, ZuChristian's superiors, testified that ZuChristian had no actual authority to either make an offer of a specific salary to Schoenberger or to make any promise of additional compensation. Furthermore, ZuChristian's testimony corroborated the testimony that he lacked the authority to make formal offers. From this evidence, it is clear that the trial court properly determined that ZuChristian lacked the actual authority to bind the C.T.A. for the additional $500 in compensation to Schoenberger.

Nor can it be said that the C.T.A. clothed ZuChristian with the apparent authority to make Schoenberger a promise of compensation over and above that formally offered by the placement department. The general rule to consider in determining whether an agent is acting within the apparent authority of his principal was stated in *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535, in this way:

> "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds his agent out as possessing—it is such authority as a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." (77 Ill. App. 2d 413, 417; accord, *Barraia v. Donoghue* (1977), 49 Ill. App. 3d 280, 364 N.E.2d 952; 1 Ill. L. & Prac. *Agency* §112 (1953).)

The plaintiff relies upon *Lou Bachrodt Chevrolet, Inc. v. Greve* (1977), 48 Ill. App. 3d 954, 363 N.E.2d 609, and *Yale Development Co. v. Texaco, Inc.* (1977), 51 Ill. App. 3d 616, 366 N.E.2d 892, to support his assertion that ZuChristian acted within his apparent authority. We find these cases distinguishable from the instant case. In *Lou Bachrodt Chevrolet, Inc.*, an employee of a hearing aid store held himself out as its manager and leased two automobiles. The owners were held liable on the leases because they did not deny the authority of the employee when questioned about the store's credit by the car leasing company and

because they paid the monthly charge on the lease cars. In *Yale Development Co.*, an employee of Texaco, who signed an option contract to purchase a piece of property as agent for Texaco, was held to have bound Texaco. Texaco denied that it was bound by the contract, alleging that only the home office could approve contracts. The court stated that the agent had the apparent authority to bind Texaco because the negotiations had been conducted solely between the agent and the landowner and, therefore, it was reasonable for the landowner to believe that the agent had the requisite authority to bind Texaco.

Here, Schoenberger's initial contact with the C.T.A. was with the placement department where he filled out an application and had his first interview. There is no evidence that the C.T.A. did anything to permit ZuChristian to assume authority nor did they do anything to hold him out as having the authority to hire and set salaries. ZuChristian was not at a management level in the C.T.A. nor did his job title of Principal Communications Analyst suggest otherwise. The mere fact that he was allowed to interview prospective employees does not establish that the C.T.A. held him out as possessing the authority to hire employees or set salaries. Moreover, ZuChristian did inform Schoenberger that the formal offer of employment would be made by the placement department.

The plaintiff maintains that a principal who clothes an agent with apparent authority will be bound by the acts of his agent even where the agent acts in contravention of secret instructions. (*Lou Bachrodt Chevrolet, Inc. v. Greve.*) We agree. However, we do not find that principle controlling here. A third party who deals with an assumed agent has the obligation to verify both the fact and extent of the agent's authority. (*Paine v. Sheridan Trust & Savings Bank* (1930), 342 Ill. 342, 174 N.E.2d 368; *Wing v. Lederer*; *Lawcock v. United States Trotting Association* (1965), 55 Ill. App. 2d 211, 204 N.E.2d 802; *Slape v. Fortner* (1954), 3 Ill. App. 2d 339, 122 N.E.2d 57.) Whether a person has notice of the lack of an agent's authority or is put on notice by circumstances is a question of fact. (*Paine v. Sheridan Trust & Savings Bank*; *Slape v. Fortner.*) We do not find that the trial court's determination that Schoenberger could not have reasonably believed ZuChristian to have the apparent authority to bind the C.T.A. was against the manifest weight of the evidence. In concluding that Schoenberger's reliance upon ZuChristian's authority was unreasonable under the circumstances, we find it unnecessary to entertain the plaintiff's estoppel and detrimental reliance arguments.

■■ Our final inquiry concerns the plaintiff's contention that irrespective of ZuChristian's actual or apparent authority, the C.T.A. is bound by ZuChristian's promise because it ratified his acts. Ratification may be express or inferred and occurs where "the principal, with knowledge of

the material facts of the unauthorized transaction, takes a position inconsistent with nonaffirmation of the transaction." (*Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 490, 186 N.E.2d 72; accord, *Security Insurance Co. v. Mato* (1973), 13 Ill. App. 3d 11, 298 N.E.2d 725.) Ratification is the equivalent to an original authorization and confirms that which was originally unauthorized. (*Wing v. Lederer.*) Ratification occurs where a principal attempts to seek or retain the benefits of the transaction. *E.g., Williams v. Magnafici* (1979), 77 Ill. App. 3d 1035, 397 N.E.2d 197; *Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1973), 12 Ill. App. 3d 362, 299 N.E.2d 601.

■■ Upon review of the evidence, we are not convinced that the C.T.A. acted to ratify ZuChristian's promise. According to Bonner's testimony, when he took over the supervision of ZuChristian's group in the fall of 1976 and was told of the promise, he immediately informed ZuChristian that the promise was unauthorized and consequently would not be honored. Subsequently, he informed Schoenberger of this same fact. Mere delay in telling Schoenberger does not, as the plaintiff contends, establish the C.T.A.'s intent to ratify. *Security Insurance Co. v. Mato*; *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 222 N.E.2d 535.

■■ Moreover, we do not accept the argument that Schoenberger's employment was a benefit which the C.T.A. retained. ZuChristian had the authority to interview and recommend Schoenberger for a position with the C.T.A. Accordingly, any benefit sought or retained by the C.T.A. in relation to Schoenberger's employment is irrelevant to the possibility of ratification of the promise for the $500 salary increase. *Lawcock v. United States Trotting Association* (1965), 55 Ill. App. 2d 211, 204 N.E.2d 802.

For the reasons we have indicated, the judgment of the circuit court of Cook County granting judgment in favor of the defendant, C.T.A., is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.