Anthony MALCAK, Plaintiff-Appellee,

v.

The WESTCHESTER PARK DISTRICT, Defendants-Appellants.

No. 84–1070.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1984.

Decided Feb. 7, 1985.

Rehearing Denied April 8, 1985.

Patrick T. Murphy, Chicago, Ill., for defendants-appellants.

---

\* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

Richard T. Sikes, Chicago, Ill., for plaintiff-appellee.

Before COFFEY and FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.\*

COFFEY, Circuit Judge.

The defendant appeals a jury verdict finding that the plaintiff was denied due process when he was fired from his position as a public employee without a hearing. Two issues are raised on appeal: (1) whether our opinion in *Vail v. Bd. of Ed. of Paris Union Sch. Dist. No. 95*, 706 F.2d 1435 (7th Cir.1983) *aff'd per curiam*, —— U.S. ——, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984), held that the question of whether a public employee has a property interest in continued employment is always a factual issue; (2) whether the district court erred in denying the defendant's motion for a directed verdict. We reverse.

### I.

The plaintiff, Anthony Malcak, was hired in 1972 as Superintendent[1] of Parks and Recreation for the Westchester Park District, an Illinois municipal corporation ("District"). According to the Operating Policy Statement Manual of the Westchester Park District ("Manual"), "[t]he position of Superintendent of Parks and Recreation is an appointed one.... The appointment is for an indefinite period and by mutual agreement with either party serving proper notice of 60 days upon termination of employment." In May, 1981, after determining the annual budget for the District, the Board of Commissioners ("Board"), contrary to their past practice, decided not to grant Malcak a raise in salary as they had in the past. The Board informed Malcak that they would review his salary in six months. On June 30, 1981 Malcak was terminated and given a sixty-day separation payment.

1. The job title was later changed to Director. For purposes of clarity, we will use the older title, Superintendent, because the Operating Manual of the Westchester Park District employs that term.

In November, 1981, the plaintiff filed suit against four individual commissioners of the Westchester Park District and against the District alleging that the defendants violated both the United States Constitution and 42 U.S.C. § 1983 in terminating him for political reasons. On June 8, 1983, the plaintiff amended his complaint and added a second count alleging that his termination without notice or hearing violated his constitutional and statutory rights to due process.

The defendants filed a motion for summary judgment as to both counts, which was subsequently denied. In discussing the plaintiff's claim of entitlement to a hearing, the district court held that, "*Vail v. Board of Education of Paris Union School District No. 95,* 706 F.2d 1435 (7th Cir.1983) again makes plain the 'property interest' necessary for a § 1983 and Fourteenth Amendment due process claim, posed in a public employment situation like that alleged by Malcak, is a factual issue. Thus, the claim cannot be disposed of by a pleading motion. It must ... be resolved at trial."

At the trial, during the plaintiff's presentation of evidence, the four Commissioners testified that they had terminated Malcak because they were dissatisfied with his work, primarily in the maintenance of the parks. After deciding to dismiss Malcak at the June 24, 1981 meeting, the Commissioners directed the President of the Board, Thomas Stanger, to confer with the Board's attorney, Edward Matuga, concerning the proper method of terminating Malcak. Matuga advised Stanger that the Board was required only to follow the Manual's directive that Malcak be given 60 days notice of a termination of employment. Matuga further advised Stanger that the Board could satisfy the 60-day notice requirement by paying Malcak for an additional 60 days. The Board followed this advice, terminating Malcak as of the end of June, 1981. Malcak was given 60 days' pay in lieu of 60 days' notice. The Commissioners further testified that the attorney, secretary and treasurer of the Park District were appointed to their positions on an annual basis; there was no similar provision for the annual appointment of the Supervisor. Rather, the Supervisor's position was governed by the Manual provision of "appointment ... for an indefinite period and by mutual agreement with either party serving proper notice of 60 days upon termination of employment."

The plaintiff testified that, after his first year of employment, his salary was automatically included in the annual budget of the Park District. The only discussion of his status at the budget hearings concerned the amount of his salary increase. Malcak, however, acknowledged that only the attorney, secretary and treasurer of the Park District were hired for one-year periods. Malcak also agreed that there were no entries in the minutes of the Board meetings stating that he was hired for a one-year term of office. Malcak further asserted that several commissioners individually had given him verbal assurances about his performance and continuing employment by the Park District. Malcak testified that, because of these assurances, "my understanding was that as long as I continued doing a good job, there would be no fear of losing it." Malcak's attention was directed to the following provision of the Manual specifying the powers of the Board:

"While discharging their responsibilities through official actions of the Board as a whole, Board members may be considered to be state officers with the Park District jurisdiction over the execution of the state's Park and Recreation laws. In the discharge of their duties, Park Board members act as a committee of the whole and not as individuals. An individual Board member has no legal or moral right to speak for the Park/Recreation Board, unless specifically authorized to do so by action of the Board."

After he was confronted with this rule of the Park District, the plaintiff conceded that he was aware of the Manual provision and agreed that the individual Board members did not have the authority to give him job assurances unless they had been specif-

ically authorized by the Board to make the assurances. While on the stand, Malcak further admitted that the minutes failed to reflect that the Board gave anyone the power to give him job assurances. Further, he also agreed that the full Board had never assured him that he would not lose his job as long as his work was satisfactory. Finally, Malcak stated that it was his understanding that the Manual provision governing his position provided that he could not be terminated unless both he and the Commissioners mutually agreed to the termination.

The defendants moved for a directed verdict at the end of the plaintiff's case. The district court granted the defendant's motion for a directed verdict as to the first count, the political firing count, noting that the plaintiff had failed to produce any evidence to substantiate his claim. The district court expressed some puzzlement with our opinion in *Vail*, specifically questioning whether the existence of a property right was a legal or factual issue. After considering the motion overnight, the district court held that the ambiguous language of the Manual provision governing Malcak's position coupled with the verbal assurances presented "an issue of fact ... as to whether he had a property interest under state law which he is entitled to have protected by the Due Process Clause. That seems to be the teaching of *Vail*."

The jury found that the plaintiff had a property interest in his job and was entitled to damages of $30,000. The district court awarded attorneys' fees in the amount of $14,036.05. After inviting the plaintiff to file a motion for reinstatement, the court also ordered reinstatement. The District[2] moved for a judgment notwithstanding the verdict and for a new trial. In denying the motion, the district judge held that, "the evidence was sufficient to go to the jury on what the Court of Appeals has characterized in *Vail* as a fact issue of whether Mr. Malcak had a property interest in his job which was protectable—protected by the

Due Process Clause of the Fourteenth Amendment."

## II.

■ In *Bd. of Regents v. Roth*, 408 U.S. 564, 576–79, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972), the Supreme Court held that the Fourteenth Amendment's procedural protection of property safeguards property interests in specific benefits such as an interest in continuing employment. In a companion case, the Supreme Court explained that, "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). To determine whether a protectable property interest exists, the court must turn to state law.

> "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ The Court held in *Perry* that a contract does not have to be written to receive constitutional protection. *Perry*, 408 U.S. at 601–02, 92 S.Ct. at 2699–2700. An implied contract may receive constitutional protection if state law recognizes its validity. *See, id.* When faced with claims of entitlement to continued employment based on implied contracts, federal courts have employed both contract and agency principles to determine whether a property interest exists. *See, e.g. Hadley v. County of DuPage*, 715 F.2d 1238, 1244 (7th Cir.1983) (Longevity in employment did not create a property interest because there was no mutually explicit understanding between the

2. Because the Park District was the only named defendant in the second count, the individual

commissioners were no longer defendants and thus were dismissed.

parties as to continued employment, the most basic requirement for a contract); *Id.* at 1242 (an agent must have express authority to bind the principal to a contract); *Harris v. Arizona Bd. of Regents,* 528 F.Supp. 987, 995–997 (D.Ariz.1981) (a principal may ratify the contract entered into by its agent without authority to bind the principal); *Soni v. Bd. of Trustees of the Univ. of Tennessee,* 513 F.2d 347, 350–51 (6th Cir.1975). (A principal, although not subject to liability under principles of agency, may be bound by an unauthorized contract under principles of estoppel if the other contracting party changes his position to his detriment).

 In *Vail,* a school board offered a coach a one-year contract and, in response to Vail's inquiries about job security during the employment interview, promised to renew the contract for an additional year. Vail accepted the offer, moved from a town in which he had lived for thirteen years, left a job he had held for ten years, and took a pay cut. The School Board, however, voted not to renew Vail's contract for the second year. Vail sued the Board, arguing that it had deprived him of property, the second year of his contract, without due process of law. There were two lines of defense: the evidence did not support a finding that the Board offered to renew the contract; and the contract was unenforceable under Illinois law. Specifically, the defendants argued three state law grounds for finding the implied contract unenforceable: (1) the provisions of the Illinois Teacher Act, Ill.Rev.Stat. ch. 122, § 24–11 (1979), pre-empted any property interest created by the implied contract; (2) any implied contract would be unenforceable because it arose from an *ultra vires* Board act; and (3) an oral promise to renew employment after the first year was unenforceable under the Statute of Frauds. Our court rejected both defense theories, first upholding the factual finding as not clearly erroneous under Fed.R.Civ.P. 52. *Vail,* 706 F.2d at 1438–39. *Vail* merely applied the clearly erroneous standard in reviewing a dispute over the facts supporting the contract. Under Illinois law, if there is no dispute over the relevant facts, the question of the existence of a contract is solely a matter of law for determination by the court. *Bank of Benton v. Cogdill,* 118 Ill.App.3d 280, 73 Ill.Dec. 871, 876, 454 N.E.2d 1120, 1125 (1983). Thus, if the facts had not been in dispute, the determination of whether the contract existed would have been made as a matter of law. After also rejecting the proffered legal bases for finding the contract unenforceable under state law, *Vail,* 706 F.2d at 1439–40, the court noted that, even if the agents acted without authority, the principal could be bound under principles of estoppel. *See, id.* at 1440. The analysis of the property interest in *Vail,* therefore, was an application of principles of agency and contract. Specifically, when we analyzed the factual basis of the implied contract, the first line of defense, we did not hold that the existence of the property interest is always a factual determination. To state the rule clearly: The determination of whether a plaintiff has a property interest protected by the Due Process Clause may be made by the court as a matter of law if the state law from which the interest derives would allow the determination to be made as a matter of law.

### III.

We turn now to the question of whether the court should have granted the motion for a directed verdict on Count II of the complaint—the procedural due process claim:

> "As this court has emphasized on numerous occasions, a motion for a directed verdict should be granted only where the evidence, together with all inferences that reasonably could be drawn from it, considered most strongly against the moving party, does not create a jury question.... A directed verdict in favor of a defendant, then, is proper only if reasonable people, viewing the facts most favorable to the plaintiff and disregarding conflicting unfavorable testimony, could not conclude that the plaintiff has made out a prima facie case."

*Crowder v. Lash,* 687 F.2d 996, 1002 (7th Cir.1982) (citations omitted). The plaintiff presents three theories to support a finding that he had a protectable interest in continuing employment: (1) the Manual provision governing his employment was an express contract assuring him that he could not be terminated without his permission; (2) based upon the automatic inclusion of his salary in the yearly budget, he had a year-to-year contract with the expectation that his contract would be renewed annually; (3) the verbal assurances by the commissioners created a contract for continued employment so long as he performed adequately.

■ Initially we address the plaintiff's interpretation of the provision of the Manual governing the terms of his employment as meaning that he was to be employed indefinitely until the time that he and the Board mutually decided upon his termination and simultaneously served each other with 60 days' notice of that joint decision. The Manual states: "The appointment is for an indefinite period and by mutual agreement with either party serving proper notice of 60 days upon termination of employment." When construing statutory language, the court must presume that the legislature did not intend an absurdity or an injustice. *Halberstadt v. Harris Trust & Savings Bank,* 55 Ill.2d 121, 302 N.E.2d 64, 68 (1973). *Cf. Roschen v. Ward,* 279 U.S. 337, 49 S.Ct. 336, 73 L.Ed. 722 (1929) (Holmes, J. "[T]here is no canon against using common sense in construing laws as saying what they obviously mean." *Id.* at 339, 49 S.Ct. at 336). Following the plaintiff's irrational interpretation of the provision, not only could the Board not fire the plaintiff without his permission, the plaintiff could not have quit without the Board's permission—an obvious absurdity. We hold that the Manual provision was a contract for at will employment, which required a 60-day notice of termination and did not create an indefinite term of employment which could be terminated only upon mutual agreement.

■ Malcak's second argument is that the defendants' course of conduct—specifically, the automatic inclusion of his salary in the annual budget—created a contract for continuing employment. "The length of time that an individual retains an asset affects the *weight* or *value* of the interest but *not* the *nature* of the interest." *Vail,* 706 F.2d at 1438 (emphasis in original). If the plaintiff fails to establish a mutually explicit understanding of entitlement to the benefit of continued employment, job longevity alone cannot create a property interest. *Hadley,* 715 F.2d at 1244. The plaintiff acknowledged that the Manual provided for the annual appointment of only three paid individuals, the attorney, secretary and treasurer of the Park District. Further, the plaintiff also conceded at trial that there were no entries in the minutes of the Board meetings stating that he was hired for a one-year term of office. It is apparent that the length of time the plaintiff was employed by the Board, nine years, did not create a contract for year-to-year employment. Additionally, the fact that the Manual specifically gives one year contractual terms to three employees and fails to mention a similar annual contract for the plaintiff plus the failure of the Board to award the plaintiff an annual contract demonstrates that the Board did not intend to create an annual contract with the plaintiff. Rather, the plaintiff was not treated differently than other employees whose salaries also were included in the annual budget. Finally, we know of no case law, nor has any been offered to us, in support of the theory that automatic inclusion of an employee's salary in an annual budget creates a contract for year-to-year employment. We hold that the automatic inclusion of the plaintiff's salary in the annual budget did not create a contract for year-to-year employment.

■ Finally, Malcak argues that the commissioners' verbal assurances created a contract for continued employment so long as the plaintiff's work was adequate. A principal may be bound by his agent if the agent was actually authorized to bind the principal. *Roscoe Co. v. Lewis Univ., Col.*

*of Law,* 79 Ill.App.3d 1098, 35 Ill.Dec. 133, 136, 398 N.E.2d 1083, 1086 (1979); *Cf. Hadley,* 715 F.2d at 1242. The agent may also bind the principal through the exercise of apparent authority. *Id.*

"Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds his agent out as possessing—it is such authority as a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess."

*Schoenberger v. Chicago Transit Authority,* 84 Ill.App.3d 1132, 39 Ill.Dec. 941, 946, 405 N.E.2d 1076, 1081 (1980). A third party dealing with an agent has the obligation to verify both the fact and extent of the agent's authority. *Id.* When a person has notice of the agent's lack of authority, belief that the agent has apparent authority to bind the principal is unreasonable; the principal will not be bound under principles of agency or estoppel. *See id.* 39 Ill.Dec. at 946–47, 405 N.E.2d at 1081–82. The Manual denied individual commissioners the right to speak for the Board as a whole: "In the discharge of their duties, Park Board members act as a committee of the whole and not as individuals. An individual Board member has no legal or moral right to speak for the Park/Recreation Board, unless specifically authorized to do so by action of the Board." *Cf., Hadley,* 715 F.2d at 1242. Since the Board had never authorized the individual commissioners to give Malcak job assurances, they lacked actual authority to make the assurances. Moreover, Malcak was aware that the individual commissioner's acts were without authority unless authorized by the Board as a whole. Because Malcak was well aware that the individual commissioners were not authorized to give him job assurances, any purported reliance by Malcak on those individual assurances was unreasonable and may not support a finding of a contract under principles of agency or estoppel. We hold that the individual assurances by the commissioners did not create a contract for continued employment so long as the plaintiff's work was adequate.

In summary, after examining the facts and the proffered bases for finding a contract for continuing employment, we conclude that the facts are not in dispute and that the plaintiff was not entitled to a finding of a contract for continuing employment as a matter of law. Since there was no legal basis for finding a contract for continuing employment, the district court erred when it failed to direct a verdict for the defendant on the plaintiff's due process claim.

The judgment of the district court is REVERSED and the due process claim is DISMISSED with prejudice.