ACSA JOHNSON, Plaintiff-Appellant, v. EDWARDSVILLE NATIONAL BANK AND TRUST COMPANY, now d/b/a Mark Twain Bank, *et al.*, Defendants-Appellees.

Fifth District   No. 5—90—0596

Opinion filed May 5, 1992.—Rehearing denied June 24, 1992.

Barbara L. Sherer, of Lucco, Brown & Mudge Law Offices, of Edwardsville, for appellant.

William L. Wimmer III, of Wimmer, Stiehl & Montalvo, P.C., of Belleville, for appellee Bank of Edwardsville.

Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, for appellee Edwardsville National Bank and Trust Company.

George E. Marron III, of Johannes & Marron, of Highland, for appellee Clover Leaf Savings and Loan.

John L. Gilbert, of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellee First Federal Savings and Loan Association.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Acsa Johnson, brought an action in the circuit court of Madison County to recover damages from various defendants, including the Edwardsville National Bank and Trust Company, now doing business as Mark Twain Bank (Mark Twain); Clover Leaf Savings and Loan (Clover Leaf); First Federal Savings and Loan Association (First Federal); and the Bank of Edwardsville. As grounds for his action, plaintiff alleged that the defendant banks (hereinafter referred to collectively as the banks) had negligently allowed money from certain of his deposits to be paid to his sister, Mary Jones, under authority of a power of attorney which was either forged or else was executed by

plaintiff at a time when he was not competent. The banks filed separate motions for summary judgment on the grounds that plaintiff's claims against them were barred as a matter of law by section 11a—23 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23), and their motions were granted in separate orders. Although additional claims against additional parties remained pending, the circuit court made an express written finding that there was no just reason for delaying enforcement or appeal. (See 134 Ill. 2d R. 304(a).) Plaintiff has now appealed in three separate proceedings, which we have consolidated for argument and decision. For the reasons which follow, we affirm in part and reverse and remand in part.

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) The materials presented to the circuit court here showed that plaintiff deposited funds at various financial institutions including Mark Twain, Clover Leaf, First Federal, and the Bank of Edwardsville. His deposits at Mark Twain totaled in excess of $68,000. His deposits at Clover Leaf amounted to more than $34,000. At First Federal Savings he deposited approximately $32,500, while at the Bank of Edwardsville his deposits exceeded $15,500.

Beginning in January of 1987, defendant Mary Jones, plaintiff's sister, began withdrawing money from these various accounts and depositing it in another account she had opened at the Bank of Edwardsville. Jones also deposited into the Bank of Edwardsville account additional sums from other accounts plaintiff had at other banks. After the funds were transferred to this new Bank of Edwardsville account, Jones began making substantial withdrawals. Jones was able to accomplish these transactions and withdrawals under authority of a power of attorney purportedly executed by plaintiff. At the time all of this was taking place, no petition had been filed to have plaintiff adjudged disabled. Although such a petition was brought sometime later, plaintiff has never been adjudged incompetent by the courts.

In his fifth amended complaint, plaintiff claims that Jones did not, in fact, have authority to make the withdrawals and that the banks were negligent in allowing her to do so. Counts I and II of the complaint are directed against Mark Twain, counts III and IV are directed against Clover Leaf, while counts V and VI are directed against First Federal. The Bank of Edwardsville is named as a

defendant in counts IX through XII. Counts I, III, V, IX and XI are each premised on the proposition that the respective banks should be held liable because the power of attorney used by Jones was actually a forgery. Counts II, IV, VI, X, and XII alleged, in the alternative, that the power of attorney was invalid because it was executed at a time when plaintiff was actually incompetent.

In both the counts alleging forgery and those asserting incompetency, plaintiff contends that the respective banks were negligent in that they failed to exercise ordinary care in determining the genuineness of the power of attorney, failed to contact plaintiff before allowing withdrawals of funds, failed to require proper evidence of the authority of Mary Jones to receive money belonging to plaintiff, and failed to compare the signature on the power of attorney with the signature on the signature cards executed by plaintiff and maintained in the banks' files. Plaintiff also asserted generally that the respective banks "knew or should have known in the exercise of ordinary care that the signature in the Power of Attorney was not the Plaintiff's normal signature and failed to inquire further into the making of the Power of Attorney."

Mark Twain, Clover Leaf, First Federal, and the Bank of Edwardsville filed separate motions for summary judgment. Their respective motions each asserted that plaintiff's cause of action was barred by section 11a—23 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23). Although that statute was subsequently repealed and replaced by section 2—8 of the Durable Power of Attorney Law (Ill. Rev. Stat. 1989, ch. 110½, par. 802—8), it was in effect at the time of the events giving rise to this litigation, and there is no dispute that it remains applicable to this dispute. (See Ill. Rev. Stat. 1989, ch. 110½, par. 802—11.) The statute provided:

> "Agency-principal deemed competent until adjudicated. A principal for whom another acts under a written instrument of agency validly executed at a time when the principal was competent and before the filing of a petition for adjudication of disability of the principal, shall be deemed competent for purposes of the agency and the agent's dealings with third persons until the principal is adjudged a disabled person or until the prior termination of the agency pursuant to the terms of the instrument ***. A third person dealing with the agent may presume, in the absence of actual knowledge to the contrary, that the instrument of agency was validly executed and that the principal was competent at the time of the execution. This Section applies to all written instruments of agency wherever executed

and to acts of the agent pursuant to the agency after September 18, 1977." Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23.

Relying on affidavits from their employees, the defendant banks contended that they believed that the power of attorney presented by Mary Jones was proper. They asserted that they had no actual knowledge that it might not have been validly executed or that plaintiff might not have been competent at the time he signed it. Given this, they argued that the statute expressly gave them the right to presume that the power of attorney was valid and that they had no obligation to inquire further as to the validity of its execution or plaintiff's competency. The circuit court agreed with the banks' analysis and granted their motions for summary judgment based on the statute.

■ On this appeal, plaintiff first contends that the circuit court erred in invoking section 11a—23 of the Probate Act (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23) to enter summary judgment against him on counts II, IV, VI, X, and XII of his fifth amended complaint, which alleged that the power of attorney was executed at a time when plaintiff was not competent. According to plaintiff, section 11a—23 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23) is not a bar to those counts because applicability of the statute "is limited to the period of time between the filing of a disability petition and [entry of] a final judgment [of disability]," and no petition for adjudication of disability had yet been filed at the time of the events giving rise to this litigation. This argument finds no support in the language of the statute itself, the legislative history, or the case law.

■ Also without merit is plaintiff's contention that the banks should be regarded as having owed him a fiduciary duty and, as fiduciaries, they should not qualify as a "third parties" who are entitled to invoke the statute's protection. A fiduciary relationship does not exist as a matter of law between a bank and its depositors. Rather, the relationship is simply that of debtor-creditor. Under Illinois law, no fiduciary duty will be found to exist absent facts showing that the depositor was subject to domination and influence on the part of the bank. (*Paskas v. Illini Federal Savings & Loan Association* (1982), 109 Ill. App. 3d 24, 30-31, 440 N.E.2d 194, 198-99.) Plaintiff has made no claim that the bank exercised any such domination and influence here.

■ Plaintiff next asserts that judgment should not have been entered against him on his claims that he was incompetent because a genuine issue of fact remained as to whether the banks had actual knowledge that plaintiff was not competent at the time the power of

attorney was executed. This argument must fail as well. The banks cannot be deemed to have had any greater knowledge than that possessed by their employees, and affidavits from the bank employees involved in the disputed transactions here stated that they thought plaintiff was competent at the time the power of attorney was executed. They further stated that they had no actual knowledge to contradict that belief. Plaintiff adduced nothing to the contrary.

What plaintiff did submit was an affidavit from his niece, Judy Nelson, in which Nelson related various statements by a Bank of Edwardsville employee who had expressed concern over how plaintiff's affairs were being handled. Nelson quotes the employee as having stated that "I'm so glad someone is in here because money has been leaving here like water," and that "[w]e've known for some time that something is wrong." The employee also allegedly stated that the signature on the power of attorney "looks nothing like Mr. Johnson's signature."

As a preliminary matter, we fail to see, and plaintiff has not explained, how these statements can possibly bear on the liability of anyone except the Bank of Edwardsville. With respect to that defendant, they scarcely suffice to raise a genuine issue of material fact on the question of plaintiff's supposed incompetency or the banks' knowledge thereof. While the remarks related by Nelson indicate an awareness that some kind of problem existed, there is nothing in them which suggests that the bank or any of its employees thought that the problem might have anything to do with a lack of competency by plaintiff at the time the power of attorney was executed.

Even if the remarks could somehow be interpreted to mean that the bank did suspect that the problem related to competency, that would still not be enough, for the statute requires more than mere suspicion before a third party's entitlement to the presumption of competency is lost. Actual knowledge is necessary. We must therefore conclude that the circuit court ruled correctly when it held that section 11a–23 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a–23) barred plaintiff's claims for recovery on the grounds that he was not competent at the time the power of attorney was executed. Accordingly, the court's orders granting summary judgment in favor of defendants on counts II, IV, VI, X and XII of plaintiff's fifth amended complaint shall be affirmed.

We reach a different conclusion with respect to counts I, III, V, IX, and XI, which were premised on the theory that the power of attorney was never actually executed by plaintiff at all but was, in fact, forged. As we indicated previously, the circuit court granted summary

judgment in favor of the defendant banks on those counts on the same theory that it entered summary judgment against plaintiff on the "incompetency" counts, namely, that they were barred by section 11a—23 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23). We believe that this finding was based on an incorrect interpretation of the statute and must fail as a matter of law.

█ It is axiomatic that in construing a statute, a court must ascertain the intent of the legislature and give it effect. To determine the legislature's intent, the court will examine the entire statute and will seek to determine the objective which the statute sought to accomplish and the evils it desired to remedy. (*Fischer v. Brombolich* (1991), 207 Ill. App. 3d 1053, 1060, 566 N.E.2d 785, 789.) Section 11a—23 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23), the statute at issue here, appeared in article XIa of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, pars. 11a—1 through 11a—23). That article concerns guardians for adults who are not competent to manage their affairs because they are disabled. Section 11a—23 itself was, by its terms, addressed to one specific aspect of the problem of disability, namely, the effects of the incompetency of a principal on the relationship he has with his agents and on the agents' dealings with third parties where the agent acts under a written instrument of agency. (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23.) With respect to both article XIa (Ill. Rev. Stat. 1985, ch. 110½, pars. 11a—1 through 11a—23) in general and section 11a—23 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23) in particular, questions of competency are thus elemental. Accordingly, where an individual's competency is not at issue, they can have no possible application.

█ Such is the case with plaintiff's forgery counts. Unlike the previous counts, they do not allege and are in no way premised on any lack of competency by plaintiff at the time the power of attorney was executed. Rather, they are based on the common law duty that a third party has when dealing with an assumed agent to use reasonable diligence and prudence to verify both the fact and extent of the agent's authority. (*Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 1138, 405 N.E.2d 1076, 1081; *Lawcock v. United States Trotting Association* (1965), 55 Ill. App. 2d 211, 218, 204 N.E.2d 802, 806.) To accept the circuit court's judgment would mean that this duty was completely supplanted by section 11a—23 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—23). There is no support for such a conclusion, and the mischief it might engender is apparent. If the circuit court were correct, a person could simply draw up a power of attorney in the name of another, sign that

person's name to the document, and then loot the person's bank accounts, and as long as the bank had no actual knowledge of the forgery, it would be immune from liability. It could just stand back and watch the theft occur. We do not believe that our legislature intended such an unjust result.

Mark Twain Bank, Clover Leaf, and First Federal Savings and Loan argue, in the alternative, that summary judgment was nevertheless properly granted in their favor on the forgery counts because plaintiff failed to establish that he suffered any damages as a result of their having paid out funds in reliance on the power of attorney. This argument is without merit. On the banks' motions for summary judgment, plaintiff had no affirmative obligation to go forward in the first instance to prove his case. (See *Anest v. Bailey* (1990), 198 Ill. App. 3d 740, 745, 556 N.E.2d 280, 282-83.) Rather, it was for defendants to show that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. (See *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 161, 498 N.E.2d 697, 699.) This they did not do. While evidence was presented which showed that the money taken from plaintiff's accounts was ultimately expended for his benefit, there is other evidence which suggests that the amounts paid for the services involved were excessive, and it is by no means clear that plaintiff wanted, needed, or would have authorized the funds to be spent as they were. A genuine issue as to plaintiff's damages therefore remains.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed insofar as it granted summary judgment in favor of defendants Mark Twain, Clover Leaf, First Federal Savings and Loan, and the Bank of Edwardsville and against plaintiff on counts II, IV, VI, X and XII of plaintiff's fifth amended complaint. It is reversed insofar as it granted summary judgment in favor of those defendants and against plaintiff on counts I, III, V, IX and XI, and the cause is remanded for further proceedings consistent with our opinion.

Affirmed in part; reversed and remanded in part.

GOLDENHERSH, P.J., and LEWIS, J., concur.