**OBRAS CIVILES, S.A., an Argentine corporation, Plaintiff,**

v.

**ADM SECURITIES, INC., a Delaware corporation, and ADM Investor Services, Inc., a Delaware corporation, Defendants.**

No. 97 C 1249.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 19, 1999.

---

Andrea L. Zopp, Natalie J. Spears, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Obras Civiles S.A.

Timothy C. Klenk, Jerome Kiley Bowman, Carol Kokinis, Ross & Hardies, P.C., Chica-go, IL, for ADM Securities, Inc., ADM Investor Services, Inc.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Obras Civiles ("Obras") seeks to recover $4,000,000 plus interest from defendants ADM Securities, Inc. ("ADMS") and ADMS's sole shareholder, ADM Investor Services, Inc. ("ADMIS"), allegedly due under the terms of a "payment commitment letter" dated December 11, 1995. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons discussed below, that motion is denied.

### Facts

Obras is a construction company in Argentina. In 1995 Obras was involved in the construction of a real estate development in Argentina in which the "purchasers/investors" were two other Argentine companies, Siares, S.A. ("Siares") and Principia, S.A. ("Principia"). In connection with this project, Siares and Principia asked Obras to establish a "solvency deposit" in Principia's security account at ADMS in the United States. This was accomplished by the deposit of $4,000,000 with ADMS's Phoenix, Arizona office, with which Principia had financial relations.

On or about December 11, 1995, the "Branch Manager" of ADMS'S Phoenix office, Robert D. Rufenacht ("Rufenacht") and a "Financial Consultant" in that office, Jose R. Moreno ("Moreno") signed what Obras calls a "payment commitment letter," which reads:

Applicant: PRINCIPIA S.A. AWL–122203

| | |
|---|---|
| Date: | December 11, 1995 |
| To: | BANCO DE CREDITO ARGENTINO<br>Reconquista 2, (1003) Buenos Aires,<br>Argentina. |
| For Account of: | OBRAS CIVILES S.A.<br>Cervino 4653. (1425) Buenos Aires,<br>Argentina |

Account Number: 999400144–2

For value received, we, the undersigned on behalf of the Applicant: hereby issue our irrevocable, non transferable commitment to pay to the order of SWISS BANK CORPORATION, N.Y., Account Name: BANCO DE CREDITO ARGENTINO, Account Number: 101 WA354562000, Reference OBRAS CIVILES S.A. the amount of four million (U.S. $4,000,000.00) Dollars, to be paid by wire transfer to you by us after settlement of the Securities on December 11, 1996.

All charges for the account of the applicant.

During the year following the issuance of the payment commitment letter, the funds that Obras had deposited were dissipated, leading to the current litigation. Obras claims that ADMS is directly liable to it under the terms of the payment commitment letter, and that ADMIS, ADMS'S parent corporation, should also be liable under a theory of piercing the corporate veil.

Defendants' motion for summary judgment is based on its argument that Rufenacht and Moreno had no authority, actual or apparent, to issue the payment commitment letter, and that even if they did it was on behalf of a disclosed principal, Principia, rather than ADMS. Defendants further claim that there are no facts that could support Obras's alter ego claim against ADMIS.

### Discussion

#### A. *Summary Judgment Standards*

Summary judgment is appropriate where "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places on the movant the burden to point to evidence in the record that demonstrates that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the burden then shifts to the non-moving party to set forth specific

facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(c). The court must address all facts in the light most favorable to the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

#### B. *Choice of law*

 Although the parties seem to agree that the choice of law question is not outcome determinative because both Illinois and Arizona law are the same with respect to the issues involved in this case, the court must make this determination in the event that any differences eventually appear. First, with respect to the agency issues, the court holds that Arizona law governs. The only connection of Illinois to this case is the location in that state of the corporate headquarters of defendants. All the relevant conduct of ADMS took place in Arizona, from which state the payment commitment letter was issued and to which state the money was deposited. Thus, the alleged agents, Rufenacht and Moreno, were the sole representatives of their alleged principal, and it was only through conduct manifested through them and ADMS's Phoenix office that Obras could have formed the beliefs necessary to support a claim of either actual or apparent authority.[1]

 With respect to apparent authority, the law of both Illinois and Arizona requires that there be a manifestation by the principal to the third party indicating that the principal authorized the agent to act as it did, and that the third party reasonably relied on the agent's authority. *See, Denten v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 887 F.Supp. 176, 178 (N.D.Ill.1995); *Hartford v. Ind. Comm'n.,* 178 Ariz. 106, 110, 870 P.2d 1202, 1206 (Ariz.App.1994). Defendants argue that because the alleged principals, ADMS and (through the alleged alter ego claim) ADMIS, are headquartered in Illinois, any manifestations by them must have come from that state, and that Obras's reliance on

---

1. Defendants claim that information acquired (or failed to be acquired) by Obras from third parties will also be considered by the trier of fact with respect to Obras's claim of apparent authority.

the agents' alleged authority must have come from Argentina, where Obras is based and from which it conducted all activities in connection with the instant dispute.

Illinois' choice of law rules, which this court must apply,[2] do not support defendants' argument. Applying the choice of law criteria described in footnote 2, it is clear that Arizona law applies to the agency issues. The payment commitment letter was signed in Arizona and sent from that state to Obras in Argentina. The performance of the payment commitment letter, including the receipt of the $4,000,000 deposit and the investment of the proceeds, was to take place in Arizona. Although ADMS's corporate headquarters are located in Illinois, and Moreno and Rufenacht were ultimately governed from that state, this international transaction was clearly centered in Arizona. Thus, Arizona law governs the agency issues, as well as any issues involving interpretation of the payment commitment letter.[3]

### C. *Authority of Rufenacht and Moreno*

#### 1. *Actual Authority*

In its initial brief opposing defendants' motion for summary judgment, Obras did not contest the claim that neither Rufenacht nor Moreno had actual authority to enter the payment commitment letter under the terms of their employment by ADMS. An agent has no actual authority to act contrary to the known wishes and instructions of his principal. Restatement (Second) of Agency § 33 (1957). Although in supplemental argument and briefing Obras argued that there was conflicting evidence regarding actual authority, there is no contesting the fact that defendants' "Supervisory and Compliance Manual" expressly prohibited the issuance of a communication such as a payment commitment letter on ADMS letterhead by their agents without approval from the home office (which approval was not given). Accordingly, the court holds that Rufenacht and Moreno acted without actual authority in issuing the payment commitment letter.

#### 2. *Apparent Authority*

Defendant argues that Obras, contrary to its usual practice, failed to adequately investigate Rufenacht's and Moreno's authority to enter into this transaction, and that Obras cannot identify any manifestation by the alleged principal, ADMS, on which Obras could rely. Although these are powerful arguments, there are a number of other facts that put the issue of apparent authority into dispute. For example, Rufenacht's title (granted by ADMS) of "Branch Manager" of ADMS's Arizona branch would appear to give him management authority to communicate under the ADMS letterhead and to accept investments. Although defendants' "Supervisory and Compliance Manual" appears to prohibit the use of letterhead and the acceptance of investments by branch managers without clearance from corporate headquarters, there would be no way for a third party to know of this direction. The fact that ADMS unquestionably had a Phoenix branch, which had its own ADMS letterhead and its own "Branch Manager," may be a sufficient manifestation by ADMS of the authority of the people in control of that branch office to accept investments and issue communications such as the payment commitment letter. There is no disclaimer on any of the documents involved in this transaction, and no place in any of those documents for a countersignature by corporate headquarters.

In addition, there is no question that the ADMS Arizona branch did in fact receive the $4,000,000 deposit, thus confirming the apparent authority of the people in charge of that branch to perform at least a significant portion of the obligations allegedly assumed by ADMS in connection with the payment commitment letter. The $4,000,000 was

---

**2.** Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court must apply Illinois' choice of law rules in diversity cases such as the instant case. Illinois courts have adopted the Restatement (2d) of Conflict of Laws (1971) ("the Restatement"), which directs the court to consider five factors in determining choice of law in contract cases: (1) the place of contracting; (2) the place of negotiations; (3) the place of performance; (4) the location of the

subject matter of the contract; and (5) the domicile residence, nationality, place of incorporation and place of business of the parties.

**3.** The parties agree that, applying the Restatement criteria, Illinois law governs with respect to Obras's claims of piercing the corporate veil and fiduciary duties allegedly owed by ADMS and ADMIS to Obras.

placed in the principal account which was established at ADMS headquarters in Chicago, by then ADMS Vice–President and Operations Manager, Jose Gallego. There is evidence that Gallego and Thomas Kadlec, Vice–President and Chief Financial Officer of ADMS, were aware of the payment commitment letter and never suggested to anyone that Rufenacht lacked authority to sign it. Thus, a jury could conclude that ADMS acquiesced in Rufenacht's conduct, justifying a reasonable conclusion by Obras that actual authority was given, although not in express language. See *Pacific Guano Co. v. Ellis*, 83 Ariz. 12, 315 P.2d 866 (1957).

■ Based on the above, the court finds that there are sufficient contested material facts to require denial of defendants' motion for summary judgment on the issue of apparent authority.

### D. *Alter Ego*

■ A plaintiff may pierce the corporate veil and defeat the limited liability otherwise enjoyed by a shareholder (in this case ADMIS) where, (1) there is such a unity of interest and ownership that the separate personalities of the corporations cease to exist; and (2) adherence to the fiction of a separate existence would sanction a fraud or promote injustice. *Van Dorn Co. v. Future Chemical and Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir.1985). Obras argues and has submitted evidence that ADMS is a mere instrumentality or alter ego of its parent and sole shareholder, ADMIS, because: (1) corporate formalities were allegedly ignored (e.g., there were no board meetings or minutes of meetings, and ADMIS allegedly performed all meaningful administrative functions for ADMS); (2) ADMIS commingled its funds with that of its subsidiary; (3) ADMS was undercapitalized; and (4) ADMIS totally dominated and controlled ADMS'S operations. Obras further claims that failure to pierce the corporate veil in this case would promote an injustice because "virtually all of ADMS'S assets" were recently sold to another company.

Defendant contests these assertions, arguing that some degree of supervision by a 100% shareholder is natural, and is not sufficient to render the subsidiary an instrumentality or alter ego. See *American Trading and Production Corp., v. Fischbach & Moore, Inc.*, 311 F.Supp. 412, 415 (N.D.Ill. 1970). Although piercing a corporate veil is a task which courts should undertake reluctantly, *see Pederson v. Paragon Pool Enterprises*, 214 Ill.App.3d 815, 819, 158 Ill.Dec. 371, 574 N.E.2d 165 (Ill.App.1st Dist.1991), there are sufficient contested facts to preclude summary judgment.

### E. *Interpretation of Payment Commitment Letter*

In their motion for summary judgment, defendants argue that the unambiguous terms of the payment commitment letter demonstrate that there is no contract between plaintiff and ADMS. Specifically, defendants argue that ADMS had a contract with its customer, Principia, and that Principia and Siares had contracts with plaintiff. Defendants argue that the payment commitment letter on its face proves that ADMS was acting on behalf of Principia, and that when an agent acts on behalf of a known principal, the agent is not liable. *McMahon v. Fiberglass Fabricators, Inc.*, 17 Ariz.App. 190, 496 P.2d 616 (Ariz.App.1972). The court disagrees.

Put into context, the terms of the payment commitment letter previously recited are as follows (emphasis added):

Applicant: PRINCIPIA S.A. AWL–122203

| | |
|---|---|
| Date: | December 11, 1995 |
| To: | BANCO DE CREDITO ARGENTINO<br>Reconquista 2, (1003) Buenos Aires,<br>Argentina. [*Obras's Bank*] |
| For Account of: | OBRAS CIVILES S.A. |

Cervino 4653. (1425) Buenos Aires, Argentina

Account Number: 999400144–2

For value received, we, the undersigned on behalf of the Applicant: [*Principia* ] hereby issue our irrevocable, non transferable commitment to pay to the order of SWISS BANK CORPORATION, N.Y., Account Name: BANCO DE CREDITO ARGENTINO, Account Number: 101 WA354562000, Reference OBRAS CIVILES S.A. [*Obras's bank account* ] the amount of four million (U.S. $4,000,000.00) Dollars, to be paid by wire transfer to you [*Obras's bank* ] by us after settlement of the Securities on December 11, 1996.

All charges for the account of the applicant [*Principia* ].

In plain English, the payment commitment letter provides that ADMS,[4] on behalf of its customer Principia, agreed to accept a deposit of $4,000,000 by Obras through its Argentine bank, to hold that sum for one year in the account of its customer Principia, and then on December 11, 1996, to pay that sum by wire transfer into Obras's Argentine bank account, through Swiss Bank Corporation. To be sure, there is a patent ambiguity with respect to the "settlement of the Securities" mentioned in the payment commitment letter. The "Securities" are not defined, and the meaning of this term would require the introduction of extrinsic evidence. *See, Estate of Tovrea v. Nolan,* 173 Ariz. 568, 574, 845 P.2d 494 (1992).

The operative clause of the letter, however, ADMS's obligation to pay "to the order of" Obras's bank account "by wire transfer," is unambiguous, negating any need to consider extrinsic evidence. *Id.* Defendants argue that the language "on behalf of the Applicant" indicates that ADMS was acting as an agent of a disclosed principal, Principia. Although defendant is correct that ADMS was acting on behalf of Principia, as it must have done in order to allow the deposit to be made in Principia's ADMS account, this does not affect or diminish ADMS's express obligation to pay the $4,000,000 to the order of Obras's bank by wire transfer on December 11, 1996. While this arrangement was unusual and perhaps unwieldy, there is no other reasonable interpretation of the payment commitment letter, which provides in plain English that "we [ADMS] ... hereby issue our [ADMS's] irrevocable, nontransferable commitment to pay ...." ADMS accepted Obras's $4,000,000 and was obligated to pay it back in a year. Whether it was required to pay interest or the augmented proceeds of an investment in the "Securities" will require further inquiry.

This decision puts to rest defendants' claim that Principia is an indispensable party to this action. Although the money was deposited in Principia's account, the obligation to repay that money to Obras was ADMS's, not Principia's. Although, according to Obras, Principia misused the money once it was deposited into its account, and allegedly met an obligation to pay Obras certain construction costs from Obras's own money, this does not make Principia an indispensable party to the suit by Obras to enforce ADMS's direct obligation to pay $4,000,000 to Obras's bank account on December 11, 1996. Perhaps (assuming personal jurisdiction) Obras could have named Principia in a separate count, or ADMS could have filed a third party complaint against Principia under a possible theory of conversion. However, defendants cite no authority, and the court cannot find any, that would support its claim that Principia is an indispensable party pursuant to Fed. R.Civ.P. 19. Defendants' claim that Siares is also an indispensable party is not even colorable.

---

**4.** For purposes of this discussion only, the court assumes that Rufenacht and Moreno had authority to sign the payment commitment letter.

**1024**

### F. *Breach of Fiduciary Duty*

██ Finally, Counts II and IV allege a breach of fiduciary against ADMS and AD-MIS, respectively. In Illinois, a fiduciary or confidential relationship may be found in two ways. It may be presumed from the relationship between the parties, such as an attorney-client relationship, or may be found to exist by the facts of a particular situation, such as a relationship where trust is reposed on one side and there is resulting superiority and influence on the other side. *Farmer City State Bank v. Guingrich*, 139 Ill.App.3d 416, 422, 94 Ill.Dec. 1, 487 N.E.2d 758 (Ill. App.4th Dist.1985). In the instant case, Obras argues that a fiduciary relationship was created when ADMS accepted the funds from Obras for deposit in Principia's account according to the terms of the payment commitment letter.

██ The relationship between Obras and ADMS created by the deposit is akin to that between a bank and a depositor. In Illinois, a fiduciary relationship does not exist as a matter of law between a bank and its depositor; the relationship is simply that of debtor/creditor. *Johnson v. Edwardsville Nat'l Bank & Trust Co.*, 229 Ill.App.3d 835, 171 Ill.Dec. 490, 594 N.E.2d 342 (Ill.App.5th Dist.1992). Obras has presented no facts to suggest that it reposed any trust on ADMS which resulted in ADMS having any superiority or influence over Obras, aside from Obras' trust that ADMS would not breach the agreement. In short, there is no evidence to suggest that the relationship between Obras and ADMS was anything other than contractual. Accordingly defendants' motion for summary judgment on Counts II and IV is granted.

### *Conclusion*

For the reasons set forth above defendant's motion for summary judgment is denied as to Count I and III and granted as to Counts II and IV. This matter is set for a report on status on January 25, 1999, at 9:15 a.m.